1  **LOCKE LORD BISSELL & LIDDELL LLP**

2
   Kristen H. Cerf
3    California Bar No. 244594
   kcerf@lockelord.com
4  400 Capitol Mall, Suite 1460
   Sacramento, CA 95814
5  Telephone:  916.554.0240
   Facsimile:  916.554.5440
6

7  David W. Klaudt (pro hac vice)
     Texas Bar No. 00796073
8  dklaudt@lockelord.com
   Jason M. Hopkins (pro hac vice)
9    Texas Bar No. 24059969
   jhopkins@lockelord.com
10 2200 Ross Avenue, Suite 2200
   Dallas, TX 75201
11 Telephone:  214.740.8000
   Facsimile:  214.740.8800
12

13 **Attorneys for Victims Richard A. Gray, Jr., Gray Investment Partners,**
   **and Cumberland Hill Capital Fund, L.P.**
14

15

16 **UNITED STATES DISTRICT COURT**
   **EASTERN DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Cr. No. 2:08-CR-00114-LKK** |
| ) | |
| **Plaintiff,** ) | **Honorable Lawrence K. Karlton** |
| ) | |
| **vs.** ) | |
| ) | **RESPONSE TO MOTION TO DISMISS** |
| **STEFAN A. WILSON** ) | |
| ) | **Hearing to adjudicate all third-party interests** |
| **Defendant.** ) | **in forfeited property set for August 4, 2009 at** |
| ) | **9:15 A.M.** |

24       Richard A. Gray, Jr., Gray Investment Partners, and Cumberland Hill Capital Fund, L.P.

25 (collectively, "Petitioners") file this Response to the Government's Motion to Dismiss[1] as follows:

26

27

_____

28 [1] Page two of the Government's motion refers to that pleading as a motion to strike.  Because the motion is captioned as a motion to dismiss, Petitioners assume this is a typographical error.

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

**Introduction**

Only one issue is before the Court:  whether the Petitioners' interest in their own deposits was superior to Wilson's at the time of Wilson's fraud.  If so, the Court must amend its order of forfeiture to recognize that superior interest.  *See* 21 U.S.C. § 853(n)(6)(A).  Petitioners believe that their property interest in their deposits continued after Wilson took possession of them because, under California law, Wilson held Petitioners' deposits in trust for them.  The Government disagrees, preferring to distribute Petitioners' deposits to other victims as part of the remission process.

Ample precedent guides the Court's decision.  When the Ninth Circuit addressed the question before the Court, it ruled that a constructive trust created by California statute can constitute a "superior interest" under section 853(n).  *United States v. $4,224,958.57*, 392 F.3d 1002, 1004 (9th Cir. 2004) (hereinafter, "*Boylan*").  In a recent opinion, the Eleventh Circuit, citing *Boylan* and authority from four other circuits, concluded:  "[W]e agree with the majority of circuits that have held that a constructive trust can serve as a superior legal interest under § 853(n)(6)(A) and thus can serve as grounds for invalidating a criminal forfeiture order."  *U.S. v. Shefton*, 548 F.3d 1360, 1365-66 (11th Cir. 2008).

Attempting to avoid *Boylan*, the Government argues that the Ninth Circuit either misunderstood or misapplied California law,[2] but it does not direct the Court to any California case rejecting *Boylan*.  At least two cases in California have cited *Boylan* approvingly.  California's Third District Court of Appeal followed *Boylan* when it concluded that "as to the wrongdoing defendant, the constructive trust arises by operation of law at the time of the wrongful conduct."  *Monier-Kilgore v. Flores*, Nos. C054502, C056348, 2009 WL 1865126 (Cal. App. June 30, 2009) (citing

---

[2] In its brief in the *Boylan* case, the Government made to the Ninth Circuit the same arguments it now presents to this Court.  A true and correct copy of that brief is attached to the appendix as Exhibit "A."  If the Ninth Circuit thought the Government's position had merit, *Boylan* would have come out the other way.

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Boylan*).[3]  And the United States Court for the Central District of California quoted *Boylan* for the proposition that "'when a fraudster acquires property from a victim by fraud, the fraudster holds the property in constructive trust for his victim. The obligation on the fraudster is imposed by law and arises immediately with his acquisition of the proceeds of the fraud.'"  *U.S. v. All Funds in Credit Suisse Private Banking Acct. No. 0251-844548-6 in Name of Alexandria Inv., LLC*, No. CV05-3910, 2005 WL 5250030, at \*8 (C.D.Cal. Sept. 20, 2005) (quoting *Boylan*).[4]   The Government cites neither case, choosing instead to rely primarily on two cases respectively applying Oklahoma and New York—not California—law.  *U.S. v. Andrews*, 530 F.2d 1232 (10th Cir. 2008); *U.S. v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185 (D.C. Cir. 1994).

Without authority from California or the Ninth Circuit, the Government's motion to dismiss fails.  Under California's constructive trust statute, Petitioners had an ownership interest in their deposits superior to that of the fraudster who held those deposits.  The Court should deny the Government's motion to dismiss and, after a hearing, amend the forfeiture order to acknowledge Petitioners' superior interest in their deposits.

## Question Presented

Whether Petitioners' interest in their deposits was "superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture."  21 U.S.C. § 853(n)(6)(A).

## Legal Standard

For purposes of the Government's Motion to Dismiss, the Court must accept as true the facts set forth in the Petition, and disregard all references in the Government's brief as to what it thinks Petitioners will or will not be able to prove, or to evidence the Government intends to introduce at a hearing on the merits of Petitioners' claims.  FED. R. CR. P. 32.2(c)(1)(A).

---

[3] Pursuant to Local Rule 5-133(i), a copy of this case is attached to the appendix as Exhibit "B."
[4] Pursuant to Local Rule 5-133(i), a copy of this case is attached to the appendix as Exhibit "C."

**<u>Standing</u>**

The Government does not quibble with Petitioners' Article III standing.  (Brief at 15 (citing *Boylan*)).[5]  Instead, the Government defines prudential standing and then concludes, without citation of authority,[6] that Petitioners lack it because "their interests are not within the zone of interests that Congress intended to protect within this forfeiture proceeding."  (Brief at 16.)  Nowhere in its brief does the Government cite a case that so holds, nor does it explain how it arrived at its conclusion.

Petitioners' claims fall squarely within the zone of interests of the statute at issue, Section 853(n).  That statute provides third-party claimants an opportunity to challenge a forfeiture order by petitioning a court to adjudicate their interests in forfeited property, and that is exactly what Petitioners are asking this Court to do.  The Government underscored the necessity the third-party claims procedure when it urged enactment of Section 853(n):  "The Department [of Justice]'s new position is that third parties who assert claims to criminally forfeited property which, in essence, are challenges to the validity of the order of forfeiture, are entitled to a judicial determination of their claims."  P.L. 98-473, S. Rep. No. 98-225, at 208 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3391.[7]

Petitioners challenge the validity of the forfeiture order itself:  Because Petitioners had a greater interest in their deposits than Wilson, when the Government stepped into his shoes and seized those deposits, it took them subject to Petitioners' ownership interests.  *Boylan*, 392 F.3d at

---

[5] The Government writes that *Boylan* "might control" the issue of Article III standing.  (Brief at 15).  But the Government offers no basis for the Court to depart from Ninth Circuit precedent on this or any other issue decided by the *Boylan* court.

[6] In making its case that Petitioners lack prudential standing, the Government never cites the Court's opinion in *U.S. v. Real Property Located at 730 Glen-Mady Way, Folsom, Sacramento County, CA*, 590 F. Supp. 2d 1295 (E.D.Cal. 2008), likely because the opinion is inapposite.  There, the Court concluded that the Government could obtain a default judgment against Wilson's house without providing notice to Wilson's victims "because they lack prudential standing to intervene as claimants."  *Id*. at 1305.  First, Petitioners are not seeking to intervene as claimants; they are following the statutory procedures for adjudication of third-party claims.  Second, as discussed below, Petitioners are not "general creditors," as the Court apparently assumed was true of all Wilson's victims.  Third, other than the mortgagor, nobody asserted a property interest in Wilson's house, through a constructive trust or otherwise.

[7] Pursuant to Local Rule 5-133(i), a copy of this legislative history is attached to the appendix as Exhibit "D."

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

1004; *Shefton*, 548 F.3d at 1366; *U.S. v. Lavin*, 942 F.2d 177, 185 (3rd Cir. 1991).   Any order granting title to the Government in property that did not belong to the fraudster from whom the Government seized it is facially invalid.   Accordingly, Petitioners' claims fall within the zone of interests protected by Section 853(n).

Contrary to the Government's protestations, Petitioners are not asking this Court to conduct a bankruptcy-like trust administration.    Instead, Petitioners ask the Court to rule that the Government cannot release to others the portion of the forfeited funds that is traceable to the Petitioners' deposits because the Government does not have valid title to those funds.   The Government makes much ado about the remission process, but even it understands that without valid title, that process cannot go forward:  "[I]f a third party establishes that he is the true owner of the property, he will prevail in the ancillary proceeding."    (Brief at 9.)    Petitioners are the true owners of their deposits, and the ancillary proceeding is the only device available to vindicate their rights.   *See U.S. v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) ("The law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property.").   Because the statutory claims process was created for the express purpose of adjudicating third-party claims, Petitioners, as third-party claimants, have standing, both Article III and prudential, to bring their claims.

## **Argument**

At the hearing on the merits of their claims, Petitioners will establish (1) a legal interest in (2) property which has been ordered forfeited, that (3) was superior to the defendant's interest in that property at the time of the acts giving rise to the forfeiture.   21 U.S.C. § 853(n)(6)(A).   The following sections consider these elements seriatim.

*1. Petitioners have a "legal" interest.*

Petitioners have a statutory interest in their deposits.   CAL. CIV. CODE § 2223-24.   The Government's argument that Petitioners cannot prevail because their statutory constructive trust interest is equitable, rather than legal, has no merit because a constructive trust constitutes a "legal

5

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA 95814

interest" under Section 853(n)(6)(A).  *U.S. v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992) ("We agree with the Third Circuit and the Fourth Circuit and hold that the term 'legal' in [the forfeiture statute[8]] should be interpreted to mean 'under the law.'") (citations omitted).  Even *BCCI*, the case the Government so heavily relies on, rejects the Government's contention:  "At the end of the day, we agree with our sister circuits that have rejected the notion that Congress intended to draw the ancient, but largely ignored, distinction between technically legal and technically equitable claims in forfeiture challenges."  *U.S. v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1190 (D.C. Cir. 1994).  Petitioners have a legal interest in their deposits.

Because Petitioners have a valid legal interest in their deposits, the Court should disregard the Government's assertions that Petitioners are not entitled to enforce an equitable interest because they lack an adequate remedy at law.  Those assertions also fail because, under California law, when the relief sought is statutory—as is the relief Petitioners seek—"it is unnecessary for plaintiff to plead and prove the existence of the usual equitable grounds, irreparable injury and absence of an adequate remedy at law.  It is enough if the requirements of the statute are satisfied."  *In re Marriage of Van Hook*, 195 Cal. Rptr. 541, 550,  147 Cal. App. 3d 970, 984 (1983) (citations omitted).  Moreover, the Government's remission process is not a remedy at law, whether adequate or otherwise, because it is a non-judicial remedy unreviewable by the courts.  *See, e.g.*, *Shefton*, 548 F.3d at 1356; *U.S. v. Campos*, 859 F.2d 1233, 1235 (6th Cir. 1988) (noting that "the purpose of § 853(n)(6), the provision at issue, was to provide for *judicial* resolution of certain claims described in that section rather than unreviewable administrative resolution").

   *2. Petitioners have an interest in the property which has been ordered forfeited.*

Petitioners have an interest in their deposits because Petitioners can show that some of the funds contained in the Washington Mutual and Ameritrade Accounts the Government seized are the

---

[8] *Schwimmer* applied Section 1963(l), a provision in the RICO statute identical to Section 853(n).  Both statutes are interpreted the same  *See, e.g.*, *Shefton*, 548 F.3d at 1365 n.2.

same funds that Petitioners deposited.  To the extent they can trace their deposits to specific property ordered forfeited, Petitioners have an interest in that specific property.  *Schwimmer*, 968 F.2d at 1583; *Grantham v. Superior Court*, No. E034061, 2004 WL 1701214, at * 4 (Cal. App. July 30, 2004) ("It is well established that a constructive trust may operate to permit the plaintiff to trace wrongfully taken funds into the form they currently hold.") (citations omitted).[9]

The Government spends quite a bit of time discussing general, or unsecured, creditors, and attempts to persuade the Court, without citation of authority, that Petitioners fall into that camp.  The federal forfeiture cases disagree with the Government.  A general or unsecured creditor is a person who "may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds."  *Schwimmer*, 968 F.2d at 1582-83.  *See also U.S. v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) (defining general creditors as those who "cannot point to any one specific asset and claim that they are entitled to payment out of the value of that specific asset"); *U.S. v. Reckmeyer*, 836 F.2d 200, 205-06 (4th Cir. 1987) (defining general creditors as those who "can claim an interest in their debtor's estates, [but] cannot claim an interest in any particular asset that makes up that estate.").  Because a general creditor has no claim to any particular asset, his interest does not warrant amendment of a forfeiture order.  *See e.g.*, *Schwimmer*, 968 F.2d at 1582-83.

Unfortunately for them, Wilson's other victims likely fall into this category:  Except for the $324.43 in Wilson's account when Petitioners deposited their money, Wilson's other victims cannot trace their contributions to any particular asset Wilson had at the time of the Government's seizure.  *Id.  See also Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. Rptr. 2d 29, 42 (Cal. 2003) ("The recovery requested in this case cannot be traced to any particular funds in Lockheed Martin's possession and therefore is not the proper subject of a constructive trust.").  Wilson's earlier victims are therefore general creditors to whom relief is only available through the remission process.

---

[9] Pursuant to Local Rule 5-133(i), a copy of this case is attached to the appendix as Exhibit "E."

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

But Petitioners, as beneficiaries of a constructive trust, are not general creditors.  Under California law, "one whose property has been wrongfully acquired by the defendant is, as a matter of justice, entitled to greater solicitude than a mere creditor of the defendant."  *Heckmann v. Ahmanson*, 214 Cal. Rptr. 177, 188 (Cal. App. 1985) (citing *Bainbridge v. Stoner,* 16 Cal. 2d 423, 106 P.2d 423 (Cal. 1940)).  *See also Schwimmer*, 968 F.2d at 1583 ("The beneficiary of a constructive trust does not have an interest superior to the trustee's [*i.e.*, defendant's] in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets.") (citing *U.S. v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985)); *U.S. v. Campos*, 859 F.2d 1233, 1238-39 (6th Cir. 1988) (noting that a petitioner who links his interest to a specific asset through a constructive trust overcomes the problem "of asserting a legal interest in the debtor's estate that frustrates general creditors").  Therefore, the Court must amend the forfeiture order if it "finds that the property ordered forfeited is traceable to property held in constructive trust."  *Schwimmer*, 968 F.2d at 1574.

The Government cites three inapposite cases in support of its position that traceability is "irrelevant" to a constructive trust claim under Section 853(n)(6)(A).  (Brief at 12.)  The first case involves a general unsecured creditor who claimed no constructive trust over any specific property.  *DSI Assoc. LLC v. U.S.*, 496 F.3d 175 (2d Cir. 2007).  The second case, one of several *BCCI* cases the Government cites, concludes that individuals "who have, *as a matter of state law*, voluntarily transferred their property interest to the defendant are no longer the owners of that property."  *U.S. v. BCCI Holdings (Luxembourg) S.A.*, 69 F. Supp. 2d 36, 59 (D.D.C. 1999).  The governing law in that case was New York law, not California law.  *Id*.  To the extent the Court is interested in New York law, Petitioners refer the Court to *Schwimmer*, the Second Circuit case cited in the preceding paragraphs that reaches a contrary result, as a more authoritative pronouncement of New York law.

In the Government's third case, an unpublished decision from the Eleventh Circuit, the court expressly refused to consider whether the petitioner could assert a constructive trust over the defendant's property because the petitioner had failed to raise that argument in the trial court.  *U.S.*

*v. Eldick*, 223 Fed. Appx. 837, 839 n.2 (11th Cir. 2007).  Since *Eldick*, the Eleventh Circuit, in a published decision, has held that a constructive trust arising under state law renders a forfeiture order invalid under Section 853(n)(6)(A).  *See Shefton*, 548 F.3d at 1365.

Under both California and federal precedent, Petitioners, as beneficiaries of a constructive trust who can trace their deposits to property ordered forfeited to the Government, are not general creditors.  Petitioners have a valid legal interest in the portion of the forfeited funds that is traceable to their deposits.

*3.  Petitioners' interest was superior to Wilson's at the time of Wilson's fraud.*

In a lengthy discussion of what it calls the "temporal issue," the Government contends that Petitioners did not obtain a superior interest in their own money soon enough.  (Brief at 30-40.)  Petitioners constructive trust interest does not exist, the Government believes, until a court says it does.  (Brief at 31.)  The Government, citing its "relation back" power, concludes that the Government's interest in Petitioners' money was greater than Petitioners' own interest at the time of Wilson's fraud.[10]  (Brief at 32.)

First, the Government's purported interest in Petitioners' deposits is not at issue.  The statute provides that Petitioners will recover if they establish an interest "superior to any right, title, or interest of *the defendant*."  21 U.S.C. § 853(n)(6)(A) (emphasis added).  "[T]he issue is not, as the court in *BCCI* stated, whether a petitioner's constructive trust interest 'can be interposed as superior to the government's forfeiture claim.'  Rather, it is whether the petitioner's interest is superior to the *defendant's* interest in the forfeited property." *Shefton*, 548 F.3d at 1366  (quoting *BCCI*, 46 F.3d at 1191 and citing 21 U.S.C. § 853(n)(6)(A)).  The determination for the Court is whether Petitioners

_____

[10] The Government also briefly argues that Petitioners cannot recover because they cannot show "an interest in the property that preceded the commission of the crime."  (Brief at 32.)  Of course they can.  Before Wilson's fraud, Petitioners owned their deposits and held them in accounts registered to Petitioners.  It was *their money*.

9

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA 95814

1    had a greater interest in their deposits than the felon who defrauded them, not the Government that

2    now holds their deposits.

3        Second, the Government's *ex post* trust concept is contrary to California law.  "It is an

4    elementary mistake to suppose that a court creates the trust.  The expression 'the court constructs the

5    trust' is 'absurd.'  The obligation on the fraudster is imposed by law and arises immediately with his

6    acquisition of the proceeds of the fraud."  *Boylan*, 392 F.3d at 1004.  *See also Monier-Kilgore v.*

7    *Flores*, Nos. C054502, C056348, 2009 WL 1865126, at *27 (Cal. App. June 30, 2009) ("as to the

8    wrongdoing defendant, the constructive trust arises by operation of law at the time of the wrongful

9    conduct") (citing *Boylan*, 392 F.3d at 1004); *U.S. v. All Funds in Credit Suisse Private Banking*

10   *Account No. 0251-844548-6 in Name of Alexandria Inv., LLC*, 2005 WL 5250030, at * 8 (C.D.Cal.

11   2005) ("It is hornbook law that, when a fraudster acquires property from a victim by fraud, the

12   fraudster holds the property in constructive trust for his victim. The obligation on the fraudster is

13   imposed by law and arises immediately with his acquisition of the proceeds of the fraud.") (quoting

14   *Boylan*).

15       Federal circuits applying other states' constructive trust laws agree with the Ninth Circuit.

16   The Eleventh Circuit concluded that a constructive trust "arises when the underlying equities exist,

17   not when it is announced."  *Shefton*, 548 F.3d at 1366.  Even *Andrews*, the case the Government so

18   heavily relies on, concludes that under Oklahoma law, "'the effective date of the constructive trust is

19   the date the wrongful act occurred.'"  *U.S. v. Andrews*, 530 F.2d 1232, 1237 (10th Cir. 2008)

20   (quoting *U.S. Dep't of Energy v. Seneca Oil Co.*, 906 F.2d 1445, 1453 (10th Cir. 1990)).

21       The plain language of the California constructive trust statutes also negate the Government's

22   "temporal issue."  Sections 2223 and 2224 of the California Civil Code provide that a fraudster "is

23   an involuntary trustee" of his victim's assets.  CAL. CIV. CODE § 2223-24.  Both statutes contain the

24   present tense verb "is," which means "to have an objective existence; have reality or actuality."

25   WEBSTER'S THIRD NEW INT'L DICTIONARY 189 (1993).  Neither statute contains a future tense verb,

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which would suggest that a constructive trust will arise at some later time, or a conditional mood verb, which would suggest that a constructive trust could arise upon the occurrence of some future event.  Under California law, Petitioners' statutory constructive trust had "an objective existence" the moment Wilson took their money by fraud.

The Government's position also creates a statutory paradox.  The forfeiture statute bars any claimant from litigating its interest in any forfeited property, except through the ancillary proceeding process.  21 U.S.C. § 853(k).  *See also U.S. v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) ("The law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property.").  But the Government contends that a constructive trust claimant can establish a "superior interest" under Section 853(n)(6)(A) *only if he has already litigated his claim.* In other words, the Government asks this Court to hold that Section 853(n)(6)(A) requires the very prior litigation that Section 853(k) precludes.  The Court should decline to do so.  *See, e.g.*, *Momeni v. Chertoff*, 521 F.3d 1094, 1097 (9th Cir. 2008) ("Where an appellate court can construe two statutes so that they conflict, or so that they can be reconciled and both can be applied, it is obliged to reconcile them.").

### The Equities of This Case

The Government, throughout its brief and apparently in the alternative, asks the Court to refuse to recognize Petitioners' property interest in their deposits because to do so would be inequitable.  Instead, the Government would prefer that every victim "share equally when the defendant's assets are distributed."[11]  (Brief at 25.)

First, the Government jumps the gun with the phrase "defendant's assets."  The singular purpose of the ancillary proceeding is to determine whether the forfeited assets belong to Petitioners

---

[11] The Government, having filed an ex parte "Motion For Order Relieving Government of Obligation to Give Direct Written Notice of Ancillary Proceedings to Victims of Defendant's Fraud," duplicitously asks: "And what about approximately 82 other victims who will not be receiving direct notice of these ancillary proceedings?"  (Brief at 28.)  If the Government is sincerely worried about someone not being fairly represented in the ancillary proceeding, it should send him notice of it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

or the felon who defrauded them.  If Petitioners have a greater interest in their deposits than did the felon who defrauded them, the Government has no authority to distribute those deposits to anybody.

Second, giving each of Wilson's victims an "equal share" would be unjust.  When Petitioners deposited their money into Wilson's Ameritrade account, that account had $324.43 in it.  Wilson had already completed his fraud of the earlier victims, spent their money, and moved on.  To use Petitioners' deposits to repay early investors would only propagate the Ponzi scheme that earned Wilson a felony conviction.

Third, the Government wrongly posits that all of Wilson's victims, including Petitioners, are "similarly situated."   (Brief at 25-28.)   Wilson's other victims are not the beneficiaries of a constructive trust and are therefore not "similarly situated" because, except for $324.43, Wilson had already spent their money.  *Monier-Kilgore*, 2009 WL 1865126, at \*27 (holding that "where the defendant dissipates money that is subject to a constructive trust, the defendant is not a constructive trustee since he has nothing of the plaintiff's to hold in trust.").  Wilson's early victims are, in the Government's words, "unsecured creditors" with no claim on any particular asset Wilson held in trust for them.    Petitioners, on the other hand, have an interest in specific property held by the Government:  their deposits.

Finally, refusing to acknowledge Petitioners' interest in the forfeited funds also would be unjust because, absent Government delay, those funds would still be in Petitioners' bank accounts.  On information and belief, the Government had been investigating Wilson's activities for months before it seized any asset.  Had the Government shut Wilson down fifteen days earlier, the Court would not have to decide any third-party claim because there would not have been enough money in Wilson's accounts to cover a filing fee.  But because the Government did not act quickly to protect the public from a Ponzi scheme,  it now has almost two million dollars—virtually all of it deposited by Petitioners—that it intends to distribute to whomever it sees fit without judicial oversight or review.  If the Court denies Petitioners' petition, it will encourage the Government to delay future

seizures until one more "big fish" comes along before stepping in to save the day and distribute the newly deposited funds to people whose money has already been spent.

The Government's brief turns equity on its head.  The Court should apply Section 853(n) and deny the Government's motion.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Petitioners respectfully request that the Court deny the Government's Motion to Dismiss, and after a hearing, amend the Preliminary Order of Forfeiture and return to Petitioners $1,490,094.14 seized from the Ameritrade Account and $425,000.00 seized from the account or accounts held by Nell Johnson, along with prejudgment interest running from the date of the seizure.  Petitioners further request any additional relief to which they may show themselves justly entitled.

Dated:  July 21, 2009

Respectfully submitted,

**LOCKE LORD BISSELL & LIDDELL LLP**

By:  /s/ David W. Klaudt
　　　　David W. Klaudt (*pro hac vice*)
　　　　Jason M. Hopkins (*pro hac vice)*
　　　　Kristen H. Cerf

Attorneys for Petitioners

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

1

2

## **CERTIFICATE OF SERVICE**

3

I certify that on July 21, 2009, I served a copy of the foregoing document on all counsel of record via the Court's CM/ECF system.  I further certify that I served a copy of the foregoing document on Assistant U.S. Attorney Steven Lapham via hand delivery, pursuant to Local Rule 78-230(c).

4

5

6                                                            /s/ Jason M. Hopkins
                                                              Jason M. Hopkins

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
400 Capitol Mall, Suite 1460
Sacramento, CA  95814

DAL 1873651v.1

14