UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>STEFAN A. WILSON,<br><br>Movant. | No. 2:08-cr-0114 TLN DAD P<br><br>ORDER APPOINTING COUNSEL,<br>GRANTING EVIDENTIARY HEARING<br>AND SETTING STATUS CONFERENCE |

Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On September 15, 2009, following his entry of a plea of guilty pursuant to a plea agreement, movant was convicted of one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of making and subscribing a false income tax return in violation of 26 U.S.C. § 7206(1). One of movant's claims for post-conviction relief is that his guilty plea was coerced by his trial counsel's promises regarding the sentence he would receive if he pled guilty to the charges. For the reasons explained below, the court will grant petitioner an evidentiary hearing only with respect to that claim.

**I. Procedural Background**

On March 13, 2008, an indictment was filed charging movant with multiple counts arising out of his operation of a Ponzi scheme known as CIC Investment Fund. (ECF No. 10.) On March 17, 2009, movant pled guilty to one count of wire fraud (Count 14) and one count of

making and subscribing a false income tax return (Count 31) pursuant to a written plea agreement.  (ECF No. 63.)  On September 15, 2009, movant was sentenced to 236 months imprisonment in the custody of the U.S. Bureau of Prisons as to the wire fraud charge and 36 months imprisonment on the false tax return charge with those sentences to run concurrently, and to be followed by a three year term of supervised release.  (ECF Nos. 105 & 106.)  In addition, imposition of a fine was waived due to petitioner's inability to pay a fine, the mandatory $200 special assessment was imposed, and petitioner was ordered to pay $12,514,623.35 in restitution.

On September 17, 2009, movant filed a timely notice of appeal from the judgment.  (ECF Nos. 104, 113.)  In an unpublished opinion, the Ninth Circuit vacated petitioner's sentence and remanded for resentencing, explaining as follows:

> The district court did not specifically rule on the Defendant's objections to three enhancements contained in the Presentence Investigation Report (PSR).  Furthermore, the district court did not rule on the Defendant's objection to the Criminal History Category assigned in the PSR.  The Court cannot properly review the sentence on appeal without rulings by the district court on these objections.  See United States v. Carty, 520 F.3d 984, 991 (9th Cir. 1008) (en banc); Kimbrew, 406 F.3d at 1151.  Thus, we must vacate and remand.  See United States v. Denton, 611 F.3d 646, 651 (9th Cir. 2010).
>
> The Defendant's remaining allegations of procedural error – that the district court failed to inquire whether the Defendant had read the PSR and that the district court did not adopt the PSR – can be resolved by the district court on remand.

(ECF No. 113.)

On remand for resentencing, the assigned District Judge made certain findings and re-imposed the same sentence that had originally been imposed, including the 236-month prison term.  (ECF No. 128.)  Movant again appealed.  (ECF No. 129.)  On June 15, 2012, the Ninth Circuit affirmed the district court's findings on remand, and affirmed movant's sentence.  (ECF No. 149.)

Movant filed his §2255 motion in this court on November 25, 2013.  (ECF No. 188.)

**II.  Movant's Claim that his Plea was Involuntary**

One of movant's grounds for relief under § 2255, is based upon his claim that his guilty plea was coerced by his retained trial counsel's promise to him that he would receive a sentence

1  of no more than five years in prison if he pled guilty.  (ECF No. 188 at 3, 11-16, 18-30.)  Movant
2  represents to the court that his trial counsel made this promise to him and also to his family
3  members.  (Id. at 11, 12-13, 19.)  Movant states that this promise by his counsel regarding the
4  sentence he would receive if he pled guilty was accepted by his family "as an absolute truth" and
5  that movant "was completely convinced."  (Id. at 11, 13.)
6      Movant states that he repeatedly questioned his counsel about his ability to guarantee a
7  specific sentence, but his counsel did not retract his statements.  (Id. at 12-14.)  Movant contends
8  that his retained trial counsel did not merely predict what his sentence might be if he pled guilty,
9  but told him "what his sentence **in fact** would be." (emphasis in original).  (Id. at 23.)
10     Movant further explains that he and his trial counsel discussed the government's original
11 plea offer, which stipulated to a range of 151–188 months imprisonment under the United States
12 Sentencing Guidelines (USSG) and recommended that movant be sentenced to the "low end" of
13 151 months.  (Id. at 14.)  Movant states that he expressed concern about accepting this offer
14 because of "such a high Guidelines range and because he had not defrauded all the investors from
15 the beginning, a point the government wanted concession."  (Id.)  According to movant, his trial
16 counsel responded that the Sentencing Guidelines were "immaterial" and that the trial judge
17 would sentence him to "three to five years" "regardless of how the guidelines are calculated."
18 (Id.)  Ultimately, according to movant, his trial counsel advised him to reject the government's
19 plea offer and to enter an "open plea" (i.e., without the benefit of a stipulation regarding movant's
20 sentence) in order to "guarantee a sentence of no more than five (5) years."  (Id. at 14-15.)  As a
21 result, the plea agreement that movant signed contained no stipulation between the parties as to
22 the length of movant's sentence under the Sentencing Guidelines.  (ECF No. 63.)
23     Movant also alleges that his trial counsel gave him "grossly incompetent" advice about the
24 applicability of the Sentencing Guidelines to his case.  According to movant, this incompetent
25 advice included inaccurate assertions that:  (1) the government would have to prove that movant
26 was a registered investment advisor in order to increase the offense level  for "Abuse of Position
27 of Trust or Use of Special Skill" under USSG § 3B1.3; (2) the increase in the offense level based
28 upon "sophisticated means" set forth in USSG § 2B1.1(b) (10) would not apply to movant; (3) the

3

increase in the offense level for being a "leader/organizer" set forth in USSG § 3B1.1(c) was not applicable to movant unless other people were indicted; (4) movant would be sentenced "regardless of how the probation officer scores the guidelines" and "regardless of what the Sentencing Guidelines say;" and (5) movant would "come out as a criminal history [category] three," even though his criminal background actually "mandated a criminal history category IV." (ECF No. 188 at 14, 18.)[1]  Movant contends that his trial counsel's erroneous advice in these areas made it impossible for him to make an intelligent decision as to whether to enter an "open" plea of guilty, and caused him to reject the government's first, more favorable, plea offer and to plead "open with no protection." (ECF  No. 200 at 10, 25.)

Movant also claims that his guilty plea was involuntary because, prior to his acceptance of the plea offer, his trial counsel demanded payment of additional attorney fees and threatened that if not paid, he would withdraw from movant's representation.  (ECF No. 188 at 15.)  Movant states that this "terrified" him; accordingly, the money was paid "in short order."  (Id.)  Movant also states that his counsel advised him not to mention to the trial court "any of the promises and guarantees with respect to a sentence term and the inapplicability of various sentencing enhancements that [counsel] had made to Movant or Movant's family."  (Id.)  Movant claims that trial counsel's threats that he would abandon the case if he did not receive additional fees, coupled with counsel's advisement that movant "had to disavow the existence of [counsel's] patently false sentencing promises and benefits to be received by entering an 'open' plea," rendered his guilty plea involuntary.  (Id. at 30.)

In sum, movant claims that his retained trial counsel induced him to plead guilty with:  (1) false promises and guarantees, both to him and to his family, that he would receive a sentence in the 3-5 year range; (2) threats to withdraw from the case if he was not paid additional fees; (3) a "threat" that movant should not mention any promises made by counsel about his sentence to the trial judge; and (4) erroneous legal advice about the Sentencing Guidelines and the applicability

---

[1] The Ninth Circuit found that the increasing of the offense level based on movant's role in the offense, his employment of sophisticated means, and his abuse of trust, contained in USSG §§ 3B1.1(c), 2B1.1(b), and 3B1.3, were properly applied by the trial judge to increase the guideline range applicable in movant's case. (ECF No. 149.)

of certain guideline provisions, described above. (Id. at 16, 18-19.) Movant argues,

> [b]ased on [counsel's] threat to quit my case, his faulty explanation of how the sentencing guidelines worked, his misguided legal advice that the enhancements (sophisticated means, abuse of trust, organizer) did not apply (openly misstating the law on particular enhancements), his mischaracterization of Judge Karlton and his view of the sentencing guidelines, his erroneous guidance of my criminal history category, and his directing me to reject the Government's plea offer . . . to sign an open plea in order to receive a sentence of three (3) to five (5) years, I was coerced, pressured, and deceived into relinquishing my trial rights, rejecting the government's plea offer, and entering an open plea.

(ECF No. 200 at 26.) Movant claims that his trial counsel "did nothing but mislead Movant and his family about how the Sentencing Guidelines operate, guarantee an impossible sentencing range of no more than five (5) years; and, ultimately, coerced Movant into accepting an open plea coupled with the threat of abandonment." (ECF No. 188 at 29.) Movant also states that absent "the threats," he would not have pled guilty but would have insisted on going to trial. (Id.) Movant claims that he insisted to his trial counsel from the inception of the case that he was innocent of the charges against him. Movant implies that absent his trial counsel's guarantees with respect to sentencing, he would have accepted the government's earlier plea offer which included a stipulation regarding the length of his sentence.

In support of these claims, movant has filed his own declaration under penalty of perjury and the declarations of his father, uncle, and brother. Movant's declaration essentially tracks his allegations as set forth above. (Id. at 80-88.) Movant's father makes the following statements in his declaration. During a preliminary meeting movant's trial counsel assured movant's family that if the case "ended in a plea bargain," movant would not "get more than four (4) years at the most." Counsel "guaranteed a sentence of not more than four (4) years in Judge Karlton's court." (Id. at 65, 66.) At a later meeting to discuss the government's plea offer, which required movant to plead guilty to three charges, movant's counsel stated that movant "would be sentenced to five (5) to seven (7) years." (Id. at 67.)

According to movant's father, members of movant's family asked counsel how he could guarantee that movant would be sentenced to 5 to 7 years, and asked "what had happened to the four (4) year sentence he had guaranteed during [the previous] meeting." (Id.) Counsel repeated

that movant would receive "no more than four (4) years imprisonment." (Id.) Counsel also told movant's family that he "could predict with absolute certainty the type of sentence [the trial judge] would impose." (Id.) At a subsequent meeting, movant's trial counsel told movant's father that movant could "end up getting 7-12 years" under the government's plea offer but that he had advised movant to "sign an open plea because that was the only way to obtain a sentence in a three (3) to (5) year range." (Id. at 68.) When a family member asked counsel how he could be sure the trial judge would not sentence movant to 12 years in prison (the low end sentence contained in the plea agreement), counsel stated that "he was certain [movant] would be sentenced in the range he had guaranteed." (Id. at 68-69.) Movant's father also declares that movant told him "he felt induced and pressured to sign an 'open plea' because [trial counsel] had directed him to do so in order to receive a sentence in the three (3) to five (5) year range." (Id. at 69.) He states that the family "fully believed [counsel's] assurances that [movant] would get no more than four (4) years in prison." (Id.)

Similarly, in his declaration movant's uncle confirms that trial counsel told the family, in his presence, that if movant was not acquitted of the charges "his sentence would be settled with a plea bargain of four years or less." (Id. at 73.) Movant's brother also declares that movant's trial counsel told the family that "the case could be settled with a plea bargain resulting in a sentence of not more than four (4) years." (Id. at 76.)

Movant has also filed transcripts of numerous purported telephone conversations between himself and his trial counsel in support of his claim that his guilty plea was induced by his counsel's guarantees with respect to the sentence he would receive and inaccurate predictions about the applicability of the sentencing guidelines to his case. (Id. at 111-48.)

Respondent acknowledges that movant's claim in this regard is based on a factual dispute regarding what movant was told by his trial counsel with respect to the sentence he would receive if he entered a guilty plea. (ECF No. 196 at 4.) However, respondent argues that this is "the rare case" in which an evidentiary hearing is not necessary to resolve this factual dispute. (Id.) Respondent claims that the transcripts of telephone conversations between movant and his trial counsel submitted by movant reveal that while movant was hoping to receive a sentence in the 3-

5 year range, he understood there was no guarantee of any such sentence. (Id. at 7-13.) Respondent contends that the transcripts of those telephone conversations reflect that movant and his trial counsel had "agreed to a strategy of pleading open in the hopes of convincing the court to sentence below the guidelines based on the 18 U.S.C. § 3553 factors." (Id. at 7.) Respondent argues that the transcripts of these conversations undercut the allegations contained in movant's § 2255 motion and make it clear that the strategy pursued by the defense was not to focus on specific sentencing guidelines but to encourage the district court to disregard the guidelines altogether and impose a lower sentence. (Id. at 7, 17.)

Respondent also argues that movant's declaration is "self-serving" and that the declarations of movant's relatives are irrelevant with regard to whether movant himself believed he was being guaranteed a sentence of less than 5 years by his trial counsel. (Id. at 9.) Respondent emphasizes that the plea agreement, which movant signed, specifically stated that "the defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive." (Id.; see also ECF No. 63 (plea agreement), at 2.)[2] With respect to movant's claim that his trial counsel coerced his guilty plea by demanding payment of additional attorney fees, respondent argues this claim "will rise and fall" with movant's argument that counsel promised him a sentence of no more than five years in prison. Respondent reasons that the request for payment of attorney fees would only have been coercive if it was true that counsel had promised a certain sentence and movant actually believed that he had no choice but to pay additional attorney fees if he wanted that

/////

---

[2] The undersigned also notes that court records reflect that at his change of plea hearing, movant was specifically advised that the maximum prison sentence he could receive was twenty-three years. (ECF No. 109 at 9.) Moreover, movant was advised that the U.S. Probation Office would provide the trial judge a presentence report which would include an assessment of the applicable sentencing guidelines, and that the sentence the judge would impose could be "higher, lower, or at the same level as the guidelines." (Id. at 10.) Movant affirmatively stated at that change of plea hearing that no threats had been made against him or any member of his family in order to induce him to plead guilty and, most importantly, that no promises were made to him that were not included within the written plea agreement. (Id. at 12.) Accordingly, and in keeping with movant's own representations to the court, the trial court found that petitioner understood the consequences of his plea and that he was pleading guilty freely and voluntarily. (Id. at 15.)

sentence. (ECF No. 196 at 13.) Respondent notes that, otherwise, there is nothing improper in retained counsel asking for additional payment. (Id. at 13-14.)

In his traverse, movant argues that respondent has analyzed the transcripts of telephone conversations between himself and his trial counsel out of context and has improperly concluded that these conversations undercut movant's allegations. (ECF No. 200 at 3-4.) Movant contradicts respondent's interpretation of the transcripts of those telephone calls and offers his own interpretation of their meaning. (See, e.g., id. at 10-22.) He notes that four members of his family have submitted sworn affidavits corroborating his assertion that his trial counsel promised he would receive a prison sentence of no more than four or five years if he entered an "open" plea of guilty. (Id. at 3.) Movant also states that his trial counsel's promises and guarantees "occurred outside of the Rule 11 hearing" and repeats his claim that he was told by his counsel not to mention these promises to the trial judge. (ECF No. 188 at 25.) He states that, for this reason, his representations made to the court at his sentencing hearing cannot be relied upon. (ECF No. 200 at 13-14.)

**III. Applicable Law**

**A. Motions Brought Pursuant to 28 U.S.C. § 2255/Evidentiary Hearing**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. United States v. Monreal, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. Davis v. United States, 417 U.S. 333, 344-45 (1974); United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.") Relief is warranted only where a petitioner has shown "a fundamental defect

8

which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346. See also United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). See also United States v. Withers, 638 F.3d 1055, 1062-63 (9th Cir. 2011); United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003). To warrant a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. Withers, 638 F.3d at 1062; McMullen, 98 F.3d at 1159. Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

**B. Ineffective Assistance of Counsel**

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (quoting Strickland, 466 U.S. at 687).

The United States Supreme court has confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012). To prevail on such a claim, a petitioner must demonstrate "'gross error on the part of counsel,'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v.

Richardson, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)). It is also ineffective assistance "to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." Leonti, 326 F.3d at 1117.

However, defense counsel is not "required to accurately predict what the jury or court might find." Turner, 281 F.3d at 881. See also McMann, 397 U.S. at 771 ("uncertainty is inherent in predicting court decisions."). Nor is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881. Although counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." Id. The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 771.

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In order to demonstrate prejudice where a defendant claims that trial counsel's defective advice caused him to accept a plea offer instead of proceeding to trial, a defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

**IV. Analysis**

This court has read the transcripts of the telephone conversations between movant and his trial counsel that are attached as exhibits to movant's §2255 motion. (See ECF No. 188 at 111-118, 123-148, 152-53.) In the undersigned's opinion, these transcripts of excerpts of telephone conversations are not conclusive as to exactly what movant was told by his trial counsel with respect to the sentence he would receive, or whether movant had a sufficient understanding to enable him to enter an intelligent and knowing guilty plea. Thus, based on the record now before
/////

1  the court it has not been "conclusively show[n] that the prisoner is entitled to no relief."
2  Blaylock, 20 F.3d at 1465.

3      There is objective evidence in the record, in the form of the declarations by movant and
4  his various family members[3], to warrant an evidentiary hearing at which it can be determined
5  whether movant was promised a specific sentence by his trial counsel if he entered an "open"
6  guilty plea and whether movant reasonably relied on such a promise to plead guilty.  At this stage,
7  movant's allegations, if proven to be true, present a colorable claim of ineffective assistance of
8  counsel.[4]

9      The undersigned also observes that the difference between movant's 236 month prison
10  sentence and his trial counsel's alleged guarantee of a sentence of five years or less, is sufficient
11  to merit an evidentiary hearing with respect to movant's allegations.  See United States v.
12  Chacon-Palomares, 208 F.3d 1157, 1159 (9th Cir. 2000) (remanding a §2255 action for an
13  evidentiary hearing where counsel allegedly underestimated defendant's actual sentence by 102
14  months and court was confronted with conflicting affidavits); United States v. Burrows, 872 F.2d
15  915, 917 (9th Cir. 1989) (evidentiary hearings are particularly appropriate when "claims raise
16  facts which occurred out of the courtroom and off the record"); Iaea v. Sunn, 800 F.2d 861, 865
17  (9th Cir. 1986) (concluding that counsel's "gross mischaracterization" of the sentence that the
18  defendant could face if he refused a plea offer constituted ineffective assistance of counsel).
19  Therefore, out of an abundance of caution, this court will grant an evidentiary hearing on
20  petitioner's claim of ineffective assistance of counsel during the plea bargaining process.  The
21  question to be resolved at that evidentiary hearing is what advice and/or guarantees did his trial

---

[3] It is correct that his family members' declarations are not directly relevant to what movant understood his sentence would be or what his trial counsel told movant about his sentence. However, these declarations are circumstantial evidence supporting movant's identical claims about what he was told by his trial counsel regarding his sentence.

[4] Of course, it is also entirely possible that movant had a full understanding that he might receive a sentence of twenty-three years in prison, but that he made an informed decision to enter an open plea in an attempt to convince the trial judge that the facts of his case did not warrant a lengthy prison sentence.  However, at this juncture, the record before the court provides an insufficient basis upon which to base such a finding.

counsel give movant prior to his entry of his guilty plea and what influence, if any, did that advice and/or guarantee have on the voluntary and intelligent character of movant's plea.

**V. Waiver of Attorney-Client Privilege**

Respondent requests that if this court orders an evidentiary hearing on any of movant's claims, the court make a finding that movant has "waived the attorney-client privilege." (ECF No. 196 at 4.)

In Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003) (en banc), the Ninth Circuit Court of Appeals held that a habeas corpus petitioner who raises an ineffective assistance of counsel claim impliedly waives the attorney-client privilege. Id. at 716, 718-20. However, the privilege is waived only "to the extent necessary to give [respondent] a fair opportunity to defend against [the claim]." Id. at 720. Thus, in such cases a court should impose a waiver "no broader than needed to ensure the fairness of the proceedings before it." Id. Further, discovery of attorney-client communications requires a narrowly-drawn protective order. Id. at 720-25.

The government has filed a full opposition to movant's § 2255 motion and the matter stands submitted to the court for decision, with the exception of the ineffective assistance of counsel claim that is the subject of the upcoming evidentiary hearing. Thus, the attorney-client privilege has been waived by movant only insofar as the government requires information necessary to defend against that specific claim. No other privileged disclosures are necessary to allow the government to defend against other claims contained in movant's §2255 motion. Accordingly, the court will issue an appropriate protective order.

**VI. Other Matters**

In light of the complexity of the issue presented as discussed above and in light of the granting of an evidentiary hearing, the undersigned has concluded that the interests of justice now requires the appointment of counsel for movant. See 18 U.S.C. § 3006A(a)(2)(B); see also Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

/////

/////

/////

## VII. Conclusion

Accordingly, good cause appearing, IT IS HEREBY ORDERED that:

1. The Federal Defender is appointed to represent movant for purposes of participating in the evidentiary hearing contemplated by this order.

2. The Clerk of the Court is directed to serve a copy of the November 25, 2013, motion pursuant to 28 U.S.C. § 2255 and this order on David Porter, Assistant Federal Defender.

3. Movant's counsel shall contact the Clerk's Office to make arrangements to obtain copies of documents in the file.

4. This matter is set for status conference on June 26, 2015, before the undersigned. All parties shall appear through counsel at the status conference and are to be prepared to schedule the matter for evidentiary hearing at that time.

5. The United States may seek oral and written information from movant's retained trial counsel in advance of the evidentiary hearing, provided such information is responsive and pertinent to movant's claim that his trial counsel rendered ineffective assistance by misinforming movant about the sentence he would receive if he entered an "open plea" to one count of wire fraud and one count of making and subscribing a false income tax return, and that this erroneous advice induced movant to plead guilty instead of proceeding to trial or accepting the government's earlier plea offer.

6. For purposes of these § 2255 proceedings, all privileged communications or materials obtained by the United States from movant's prior retained counsel for purposes of conducting the evidentiary hearing set by this order shall be deemed confidential. Until such time as this court may order otherwise, these communications or materials may be used only by representatives of the United States Attorney's Office and only for purposes of preparation and conduct of the evidentiary hearing. Disclosure of the contents of the communications or materials themselves may not be made to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this court. The communications and materials may not be used, cited, or relied upon by the government in any habeas corpus or other related proceedings in federal court, or in any future proceedings against

movant, including any possible retrial.  This order shall continue in effect after the conclusion of these § 2255 proceedings and specifically shall apply in the event of a retrial of all or any portion of petitioner's criminal case, except that either party maintains the right to request modification or vacation of this order upon entry of final judgment in this matter.  See Bittaker, 331 F.3d at 720-25.

Dated:  May 29, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
Wilson114.eh.2

14