1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                          No. 2:08-cr-0114 TLN DAD P

12                      Respondent,

13           v.

14   STEFAN A. WILSON,                                  FINDINGS AND RECOMMENDATIONS

15                      Movant.

16

17           Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside, or

18   correct his sentence pursuant to 28 U.S.C. § 2255.[1]  On September 15, 2009, following his entry

19   of a plea of guilty pursuant to a plea agreement, movant was convicted of one count of wire fraud

20   in violation of 18 U.S.C. § 1343  and one count of making and subscribing a false income tax

21   return in violation of 26 U.S.C. § 7206(1).  Movant now seeks post-conviction relief on the

22   grounds that his trial counsel rendered him ineffective assistance.  Upon careful consideration of

23   the record, the evidence including that adduced at an evidentiary hearing and the applicable law,

24   the undersigned recommends that movant's § 2255 motion be denied.

25   /////

26   /////

27

28   [1]   This motion was assigned, for statistical purposes, the following civil case number: No. 2:13-
     cv-2466 TLN DAD P.

                                                   1

## I. Procedural Background

On March 13, 2008, an indictment was filed charging movant with multiple counts arising out of his operation of an alleged Ponzi scheme known as CIC Investment Fund.  (ECF No. 10.)  On March 17, 2009, movant pled guilty to one count of wire fraud (Count 14) and one count of making and subscribing a false income tax return (Count 31) pursuant to a written plea agreement.  (ECF No. 63.)  That plea agreement did not contain any agreement between the parties as to any appropriate sentencing range, but rather provided that "[s]entencing is a matter solely within the discretion of the Court and the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement."  (Id. at 2.)  On September 15, 2009, movant was sentenced to 236 months imprisonment in the custody of the U.S. Bureau of Prisons as to the wire fraud charge and 36 months imprisonment on the false tax return charge with those sentences to run concurrently, to be followed by a three year term of supervised release.  (ECF Nos. 105 & 106.)  In addition, imposition of a fine was waived due to movant's inability to pay a fine, the mandatory $200 special assessment was imposed, and movant was ordered to pay $12,514,623.35 in restitution to the victims of his offenses.

On September 17, 2009, movant filed a timely notice of appeal from the judgment.  (ECF Nos. 104, 113.)  In an unpublished opinion, the Ninth Circuit vacated petitioner's sentence and remanded for resentencing, explaining as follows:

> The district court did not specifically rule on the Defendant's objections to three enhancements contained in the Presentence Investigation Report (PSR).  Furthermore, the district court did not rule on the Defendant's objection to the Criminal History Category assigned in the PSR.  The Court cannot properly review the sentence on appeal without rulings by the district court on these objections.  See United States v. Carty, 520 F.3d 984, 991 (9th Cir. 1008) (en banc); Kimbrew, 406 F.3d at 1151.  Thus, we must vacate and remand.  See United States v. Denton, 611 F.3d 646, 651 (9th Cir. 2010).
>
> The Defendant's remaining allegations of procedural error – that the district court failed to inquire whether the Defendant had read the PSR and that the district court did not adopt the PSR – can be resolved by the district court on remand.

2

1  (ECF No. 113.)

2        On remand for resentencing, the then assigned District Judge made certain findings and

3  re-imposed the same sentence that had originally been imposed upon movant, including the 236-

4  month prison term.  (ECF No. 128.)  Movant again appealed.  (ECF No. 129.)  On June 15, 2012,

5  the Ninth Circuit affirmed the district court's findings on remand, and affirmed movant's

6  sentence.  (ECF No. 149.)  In relevant part, the Ninth Circuit found that upward adjustments

7  based on movant's role in the offense, his employment of sophisticated means in committing his

8  crimes, and his abuse of trust, as provided for in USSG §§ 3B1.1(c), 2B1.1(b), and 3B1.3, were

9  properly applied by the trial judge to increase the sentencing guideline range applicable in

10  movant's case.  (Id. at 2-3.)

11        Movant filed his §2255 motion in this court on November 25, 2013.  (ECF No. 188.)  An

12  evidentiary hearing was held on September 29-30, 2015 on movant's claim that his guilty plea

13  was coerced by his trial counsel's promises regarding the sentence he would receive if he pled

14  guilty to the charges in an "open plea."  Movant filed a post-hearing brief on October 15, 2015.

15  (ECF No. 254.)  Respondent filed a post-hearing brief on October 22, 2015.  (ECF No. 255.)

16  **II.  Applicable Law**

17       **A.  Motions Brought Pursuant to 28 U.S.C. § 2255**

18        A federal prisoner making a collateral attack against the validity of his or her conviction

19  or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to

20  28 U.S.C. § 2255, filed in the court which imposed sentence.  United States v. Monreal, 301 F.3d

21  1127, 1130 (9th Cir. 2002).  Under § 2255, the federal sentencing court may grant relief if it

22  concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the

23  United States.  Davis v. United States, 417 U.S. 333, 344-45 (1974); United States v. Barron, 172

24  F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a petitioner must demonstrate the existence of

25  an error of constitutional magnitude which had a substantial and injurious effect or influence on

26  the guilty plea or the jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also

27  United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's

28  harmless error standard applies to habeas cases under section 2255, just as it does to those under

section 2254.")  Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346.  See also United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). See also United States v. Withers, 638 F.3d 1055, 1062-63 (9th Cir. 2011); United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).  To warrant a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. Withers, 638 F.3d at 1062; McMullen, 98 F.3d at 1159.  Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

### B.  Ineffective Assistance of Counsel

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (quoting Strickland, 466 U.S. at 687).

The United States Supreme court has confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012).  To prevail on such a claim, a petitioner must demonstrate "'gross error on the

1    part of counsel,'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v.

2    Richardson, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so

3    incorrect and so insufficient that it undermined his ability to make an intelligent decision about

4    whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir.

5    1992) (noting that "that familiarity with the structure and basic content of the Guidelines . . . has

6    become a necessity for counsel who seek to give effective representation")).

7         However, defense counsel is not "required to accurately predict what the jury or court

8    might find." Turner, 281 F.3d at 881. See also McMann, 397 U.S. at 771 ("uncertainty is

9    inherent in predicting court decisions."); United States v. Martini, 31 F.3d 781, 782 n.1 (9th Cir.

10   1994) ("Trials are difficult to predict, and advising a criminal defendant whether to accept or

11   reject a plea offer can be a tricky proposition."). Nor is defense counsel required to "discuss in

12   detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the]

13   case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at

14   881. Although counsel must fully advise the defendant of his options, he is not "constitutionally

15   defective because he lacked a crystal ball." Id. Finally, counsel are strongly presumed to have

16   engaged in conduct that falls within the wide range of reasonable professional assistance. See

17   Strickland, 466 U.S. at 689; Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990).

18        A mere inaccurate prediction of a sentence, standing alone, does not constitute ineffective

19   assistance of counsel. Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986). However, "the gross

20   mischaracterization of the likely outcome . . . , combined with the erroneous advice on the

21   possible effects of going to trial, falls below the level of competence required of defense

22   attorneys." Id. at 865 (citations omitted). See also United States v. Manzo, 675 F.3d 1204 (9th

23   Cir. 2012) (trial counsel's advice to defendant about his possible sentence constitutionally

24   deficient where the misadvice "had major impact on the calculation of the discretionary

25   Sentencing Guidelines."). The relevant question is not whether "counsel's advice [was] right or

26   wrong, but . . . whether that advice was within the range of competence demanded of attorneys in

27   criminal cases." McMann, 397 U.S. at 771.

28   /////

1    As a general rule, "defense counsel has the duty to communicate formal offers from the

2  prosecution to accept a plea on terms and conditions that may be favorable to the accused."

3  Missouri v. Frye, ___ U.S. ___, ___, 132 S. Ct. 1399, 1408 (2012).  Trial counsel is also to

4  "advise a client to enter a plea bargain when it is clearly in the client's best interest."  United

5  States v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003).  "[W]here the issue is whether to advise

6  the client to plead or not 'the attorney has the duty to advise the defendant of the available options

7  and possible consequences' and failure to do so constitutes ineffective assistance of counsel."

8  United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Beckham v. Wainwright,

9  639 F.2d 262, 267 (5th Cir.1981)).  In short, trial counsel must give the defendant sufficient

10  information regarding a plea offer to enable him to make an intelligent decision of whether to

11  accept or reject it.  Id. at 881.

12    Prejudice is found where "there is a reasonable probability that, but for counsel's

13  unprofessional errors, the result of the proceeding would have been different."  Strickland, 466

14  U.S. at 694.  Where a plea offer has lapsed or been rejected because of trial counsel's deficient

15  performance and the defendant has later accepted another, less favorable plea offer,

16    defendants must demonstrate a reasonable probability they would
17    have accepted the earlier plea offer had they been afforded effective
   assistance of counsel.  Defendants must also demonstrate a
18    reasonable probability the plea would have been entered without the
   prosecution canceling it or the trial court refusing to accept it, if
19    they had the authority to exercise that discretion under state law.
   To establish prejudice in this instance, it is necessary to show a
20    reasonable probability that the end result of the criminal process
   would have been more favorable by reason of a plea to a lesser
21    charge or a sentence of less prison time.

22  Frye, 132 S. Ct. at 1409.  In order to demonstrate prejudice where a defendant claims that trial

23  counsel's defective advice caused him to accept a plea offer instead of proceeding to trial, a

24  defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not

25  have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59

26  (1985).

27  /////

28  /////

6

### III.  Movant's Claims

#### A.  Trial Counsel's Promises Regarding Movant's Sentence

##### 1.  Description of Claim

In his first ground for federal habeas relief, movant claims that his retained trial counsel rendered him "constitutionally ineffective assistance of counsel by coersing [sic] movant to plead guilty involuntarily and unintelligently in violation of the Sixth Amendment."  (ECF No. 188 at 3.)  Specifically, movant claims that his guilty plea was coerced by his trial counsel's promise to him that he would receive a sentence of no more than five years in prison if he pled guilty.  (Id. at 3, 11-16, 18-30.)  Movant states that his trial counsel made this promise to him and also to his family members.  (Id. at 11, 12-13, 19.)  Movant states that this promise by his counsel regarding the sentence he would receive if he pled guilty was accepted by his family "as an absolute truth" and that movant "was completely convinced."  (Id. at 11, 13.)  Movant states that he repeatedly questioned his counsel about his ability to guarantee a specific sentence, but his counsel did not retract his statements.  (Id. at 12-14.)  Movant contends that his retained trial counsel did not merely predict what his sentence might be if he pled guilty, but told him "what his sentence **in fact** would be." (emphasis in original).  (Id. at 23.)

Movant further explains that he and his trial counsel discussed a plea offer from the government in which the government agreed to stipulate to a sentencing range of 151–188 months imprisonment under the United States Sentencing Guidelines (USSG) and to recommend to the sentencing judge that movant be sentenced to the "low end" of that range, 151 months.  (Id. at 14.)  Movant states that he expressed concern about accepting this offer because of "such a high Guidelines range and because he had not defrauded all the investors from the beginning, a point the government wanted concession."  (Id.)  According to movant, his trial counsel responded to the offer by telling him that the Sentencing Guidelines were "immaterial" and that the trial judge would sentence him to "three to five years" "regardless of how the guidelines are calculated."  (Id.)  Ultimately, according to movant, his counsel advised him to reject the government's plea offer and to enter a hybrid form of an "open plea" (i.e., movant would plead guilty to two counts with the governments agreeing to dismiss the remaining counts but without

1   the benefit of a government stipulation as to the applicable guideline range or an agreed upon

2   government recommendation regarding a sentence within that range) in order to "guarantee a

3   sentence of no more than five (5) years."  (Id. at 14-15.)  As a result, the plea agreement that

4   movant entered into contained no stipulation between the parties as to the applicable sentencing

5   guideline range or any agreement as to what sentence the government would seek.  (ECF No. 63.)

6          Movant also alleges that his trial counsel gave him "grossly incompetent" advice about the

7   applicability of the Sentencing Guidelines to his case.  According to movant, this incompetent

8   advice included inaccurate representations to him by his counsel that:  (1) the government would

9   have to prove that movant was a registered investment advisor in order to upwardly adjust his

10  offense level  for "Abuse of Position of Trust or Use of Special Skill" under USSG § 3B1.3; (2)

11  the increase in his offense level based upon "sophisticated means" set forth in USSG § 2B1.1(b)

12  (10) would not apply to movant; (3) the upward adjustment in the offense level for being a

13  "leader or organizer" under USSG § 3B1.1(c) was not applicable to movant unless other

14  individuals were indicted with respect to the fraud; (4) movant would be sentenced "regardless of

15  how the probation officer scores the guidelines" and "regardless of what the Sentencing

16  Guidelines say;" and (5) movant would "come out as a criminal history [category] three," even

17  though his criminal background actually "mandated a criminal history category IV."  (ECF No.

18  188 at 14, 18.)  Movant contends that his trial counsel's erroneous advice on these sentencing

19  issues made it impossible for him to make an intelligent decision as to whether to enter an "open"

20  plea of guilty, and instead caused him to reject the government's first, more favorable, plea offer

21  and to plead "open with no protection." (ECF  No. 200 at 10, 25.)

22         Movant also claims that his guilty plea was involuntary because, prior to his acceptance of

23  the government's plea offer, his counsel demanded payment of additional attorney fees and

24  threatened that if not paid, he would withdraw from movant's representation.  (ECF No. 188 at

25  15.)  Movant states that this "terrified" him; accordingly, the money was paid "in short order."

26  (Id.)  Movant also states that his counsel advised him not to mention to the trial court "any of the

27  promises and guarantees with respect to a sentence term and the inapplicability of various

28  sentencing enhancements that [counsel] had made to Movant or Movant's family."  (Id.)  Movant

claims that trial counsel's threats that he would abandon the case if he did not receive additional

fees, coupled with counsel's advisement that movant "had to disavow the existence of [counsel's]

patently false sentencing promises and benefits to be received by entering an 'open' plea,"

rendered his guilty plea involuntary.  (Id. at 30.)

In sum, movant claims that his retained counsel induced him to plead guilty with:  (1)

false promises and guarantees, both to him and to his family, that he would receive a prison

sentence in the 3-5 year range; (2) threats to withdraw from the case if he was not paid additional

fees; (3) a "threat" that movant should not mention any promises made by counsel about his

sentence to the trial judge; and (4) erroneous legal advice about the Sentencing Guidelines and the

applicability of certain guideline provisions, described above.  (Id. at 16, 18-19.)  Movant argues,

> [b]ased on [counsel's] threat to quit my case, his faulty explanation
> of how the Sentencing Guidelines worked, his misguided legal
> advice that the enhancements (sophisticated means, abuse of trust,
> organizer) did not apply (openly misstating the law on particular
> enhancements), his mischaracterization of Judge Karlton and his
> view of the Sentencing Guidelines, his erroneous guidance of my
> criminal history category, and his directing me to reject the
> Government's plea offer . . . to sign an open plea in order to receive
> a sentence of three (3) to five (5) years, I was coerced, pressured,
> and deceived into relinquishing my trial rights, rejecting the
> government's plea offer, and entering an open plea.

(ECF No. 200 at 26.)

Movant also states that absent "the threats" of his counsel he would not have pled guilty

but would have insisted on going to trial.  (ECF No. 188 at 29.)  Movant claims that he insisted to

his trial counsel from the inception of the case that he was innocent of the charges against him.

On the other hand also implies that absent his trial counsel's guarantees with respect to

sentencing, he would have accepted the government's earlier plea offer which included a

stipulation regarding the applicable guideline sentencing range and a government

recommendation of a sentence at the low end of that range.[2]

/////

---

[2]  At the evidentiary held in this action, petitioner appeared to emphasize that had he been
properly advised by his counsel he would have accepted the government's earlier plea offer and
not proceed to trial.

1    In support of these claims, movant has filed his own declaration under penalty of perjury

2    and the declarations of his father, uncle, and brother.  Movant's declaration essentially tracks his

3    allegations as set forth above.  (Id. at 80-88.)  Movant's family members declare, essentially, that

4    movant's trial counsel led them to believe through statements made at various meetings that if

5    movant pled guilty he would receive a sentence of four years in prison and that they sincerely

6    believed counsel's statements that this was the sentence movant would receive .  (Id. at 65-76.)

7    Movant also filed partial transcripts of several purported telephone conversations,

8    conducted over monitored jail telephones, between himself and his trial counsel in support of his

9    claim that his guilty plea was induced by his counsel's guarantees with respect to the sentence he

10   would receive and counsel's inaccurate predictions about the applicability of the Sentencing

11   Guidelines to his case.  (Id. at 111-48.)  At the evidentiary hearing, movant testified that at one

12   point he possessed the complete transcripts of these telephone conversations, but he threw out the

13   transcripts that he didn't think were relevant to his claims for collateral relief.  (ECF No. 250 at

14   69, 107-110.)[3]

15                  2**. Evidentiary Hearing**

16   On September 29 and 30, 2015, the undersigned held an evidentiary hearing on movant's

17   claims.  At the outset of that hearing, movant's counsel argued that movant's trial counsel

18   rendered ineffective assistance in grossly miscalculating the applicability of various upward

19   adjustments under the sentencing guidelines to movant's case, which led trial counsel to

20   inaccurately predict the sentence which movant was likely to receive, and contributed to

21   counsel's faulty advice to movant to reject the government's plea offer and enter the hybrid

22   "open" pleas of guilty to two counts under which he was sentenced.  (Id. at 5-7.)

23   Movant's father, mother, uncle, brother and former wife took the witness stand and

24   testified consistently with the affidavits filed by movant's father, uncle and brother that, at

25   various meetings, movant's trial counsel told them, or "guaranteed" as they interpreted it, that

26   _____

27   [3]  Accordingly, neither the audiotapes of these jail telephone conversations nor complete
     transcripts of them were filed with this court.  Partial transcripts of some of these conversations
     were admitted into evidence at the evidentiary hearing, with the recognition that they were taken,

28   at least partially, out of context.  (Id. at 71.)

1    movant would receive a sentence of four years in prison, "five years or less," or "five to seven

2    years" if he entered an "open" plea.  (Id. at 31, 36, 47, 59, 146, 159, 170, 173, 180, 192.)

3          Movant also testified.  In relevant part, he testified that based on his counsel's

4    representations to him, he believed if he entered the "open" plea he would receive a prison

5    sentence of "somewhere between three and five years."  (Id. at 83-84, 94.)  Movant claimed to

6    believe this even after the government offered him a plea agreement which included a stipulation

7    to an applicable sentencing guideline range of between 151 and 188 months in prison with a

8    government recommendation of the imposition of a 151 month sentence.  (Id. at 94, 103-04.)

9    Movant testified that his trial counsel told him "the [sentence] enhancements don't apply . . . the

10   guidelines aren't important . . . ."  (Id. at 84.)

11         In his evidentiary hearing testimony movant repeated the allegation of his § 2255 motion

12   that his trial counsel told him not to tell the trial judge at the plea colloquy about his

13   conversations with counsel regarding "sentencing ranges" and the guidelines, but just to answer

14   the judge's questions "yes or no."  (Id.)  Movant also testified, unconvincingly, that when the trial

15   judge asked him whether anyone had made any promises to him other than those contained in the

16   plea agreement to induce him to plead guilty he said "no" because he understood that question to

17   be asking only whether anyone had offered him "money or you can get something" in exchange

18   for his guilty plea.  (Id. at 84-85, 132-34.)  According to movant, he did not think the judge was

19   asking him about his own counsel's assurances to him about what his sentence would be.  (Id. at

20   85.)

21         Movant also testified at the hearing that his trial counsel told him the "sentencing

22   enhancement" for having played a leadership role in the commission of the fraud would not apply

23   to him unless someone else in his organization was indicted before he pled guilty.  (Id. at 86.)

24   Specifically, he testified that his counsel told him that "leadership does not apply in my case

25   because nobody else was indicted."  (Id. at 88.)  Movant described the nature of his counsel's

26   advice to him in this regard as follows:

27             He actually encouraged me it'd be good if I would hurry up and
               plea (sic) before anybody else might be indicted because he thought
28             Dr. Barham was going to be indicted.  And he said, you know, if

1

you get indicted and get sentenced – I'm not sure if he said
sentenced, but if you plead out before that, that's good for you
because then they can't say anybody else was involved.  There's no
leadership role here.

2

3

4   (Id.)  Movant also testified, however, that he had previously told his counsel that "Barham was

5   out recruiting investors."  (Id. at 87.)  Movant also reviewed with his counsel the factual basis for

6   his plea, including the paragraph of that factual basis which stated that "one of the primary

7   promoters of the CIC Investment Fund was Dr. Stephen Barham, who recruited numerous

8   investors."  (Id. at 88; see also Defense Exhibit A-58.)

9       Movant testified that his trial counsel told him the upward adjustment for "abuse of

10  position of trust" would typically not apply in cases such as his unless the defendant was a

11  registered investment advisor.  (ECF No. 250 at 90; see also Defense Exhibit C-17.)  Movant

12  testified he would have been willing to accept the government's original plea offer if he had

13  known "the correct facts and law about the enhancements."  (ECF No. 250 at 93.)

14      Movant acknowledged that he was advised at his arraignment on the indictment that the

15  maximum possible penalty for wire fraud was up to 30 years in prison.  (Id. at 96.)  He further

16  testified that after the presentence report was prepared by the probation officer and included the

17  recommendation of a 236 month prison sentence, his trial counsel "downplayed" that

18  recommendation and told him "the enhancements don't apply, it's going to be a lot lower" and

19  that the presentence report had "no influence on the court."  (Id. at 102.)   Movant testified that he

20  believed his trial counsel's advice that he "would get three to five years because Judge Karlton is

21  lenient, not a heavy sentencer, and none of these enhancements apply . . . we have the best judge,

22  Judge Karlton hates the guidelines."  (Id. at 120.)

23      Movant testified that he directed his trial counsel to reject the government's plea offer

24  with a stipulated guideline range of 151-188 months in prison and a government recommendation

25  of a 151 month sentence.  (Id. at 111-12.)  He did so, movant testified, because his counsel told

26  him that "the only way to get the three to five years [sentence] is to plead open."  (Id. at 112.)

27  However, as the sentencing hearing approached, his counsel began suggesting other possible

28  sentences, such as seven or eight years in prison.  (Id. at 134.)  Movant testified that even after

1    trial counsel suggested these higher possible sentences, he still believed he had made the right

2    decision to "plead open" because of the "promises" previously made by his counsel.  (Id. at 136-

3    37.)   Movant testified that his counsel told him "all along, from the first day he came and visited

4    me" that he could get "a three to seven-year sentence from an open plea."  (Id. at 81.)

5          Movant also testified that his trial counsel told him the trial judge "held him [counsel] in

6    high regard and the judge knew him well," and that he was "close" with the prosecutor, but

7    counsel did not explain how this would cause movant to receive a five year or any other

8    sentence.  Movant conceded at the evidentiary hearing that his counsel did not tell him that he had

9    a "secret, underhanded deal" in movant's case  (Id. at 137.)

10         A private investigator, a former federal probation officer, who worked with movant's

11   counsel on this case, testified that during a jail visit he heard counsel tell movant that "there were

12   no guarantees and that Mr. Wilson had to recognize that he could get up to a 20-year sentence

13   under the plea agreement."  (Id. at 205-06.)   At that same meeting, movant asked the investigator

14   whether he could receive a lower sentence and the investigator replied that "there were no

15   guarantees and he could get the maximum sentence."  (Id. at 206.)

16         Movant's counsel also testified at the evidentiary hearing.[4]  Counsel testified that although

17   it occurred several years ago, he specifically remembered discussing the Sentencing Guidelines

18   with movant as well as how they applied to the facts of his case.  Specifically, counsel testified:

19            I spent a lot of time on the guidelines, both myself and with Mr.
              Wilson discussing the guidelines, going through them with him,
20            you know, how – what the guideline is, how it typically applies,
              what arguments we might have to try and get around it.  And so I
21            spent a lot of time doing that in this particular case, as in all my
              cases.
22

23   (ECF No. 251 at 10.)  Counsel convincingly testified he certainly did not guarantee movant that

24   he would receive a sentence of four years, or three to five years.  (Id. at 11.)

25   /////

26

27   _____
     [4]  Movant's former counsel is an experienced criminal defense attorney with many years of
     additional experience as a criminal division Assistant United States Attorney.  The undersigned
28   found his testimony to be credible.

13

In his testimony counsel described movant's plea as a "hybrid plea" because, while movant pled "open" to two counts of the indictment, there was a written plea agreement which called for the dismissal of the remaining charges brought against him.  (Id. at 11-12.)  Counsel testified that he explained the situation to movant as follows:

> We had a plea offer, and if I recall, the range was 151 to 188.  So I presented that to Mr. Wilson.  I said, you know, this is not – it's not a terrible deal.  It's not a great deal.  It's a decent deal, but you're locked in to 151 to 188.   The government, you know, will recommend 151, but they're not going to let you argue for less than that.  So you have to agree to go to prison for 151 months if you want this deal, and he rejected that and wanted to argue for less.
>
> * * *
>
> [H]e did not want to lock himself in to at least 151 months.  He wanted the opportunity to get less than that.  I said well, to do that, you've got to, you know, have an open sentence.  In other words, the government can argue for whatever it wants and we argue for whatever we want and then we just can pick whatever we want to argue.  And he and I discussed that many times, you know, should we argue for two to three, three to five, five to seven, whatever the – it was a moving target all the time.

(Id. at 12-13.)

Movant's original counsel also testified that he told movant he would be arguing against some of the upward adjustments that might apply under the sentencing guidelines to his case but that "there was still a chance they may be applied."  (Id. at 13.)  He testified that he specifically told movant "we are hoping for a lesser sentence, but you could get 20 years" and warned him that "there are no guarantees."  (Id. at 13-14.)  Indeed, counsel sent movant a letter in which he specifically advised movant as follows:

> I wanted to put the government's plea offer in perspective for you.  I know you have read the plea agreement.  You should know that if all does not go well you could be facing 25-40 years in prison.  I believe it is more likely that you will be sentenced to between 5 and 10 years but, as we have discussed, there are no guarantys [sic].  The statutory maximum for each count to which the government wants you to plead is 20 years so you are facing a maximum sentence of 40 years in prison.  Judge Karlton does not typically sentence that high in fraud cases but you must understand it is a possibility, though somewhat slim.
>
> I believe it is in you [sic] best interest to enter a plea and make your arguments to the judge at sentencing.  If we go to trial and you are convicted, and I think you would be, it will only serve to highlight the evidence against you and anger the judge that you put the

14

1  government to the trouble of going to trial.  This would not be best
2  for you.

3  (ECF No. 228-4 at 1, Government's Exhibit 11.)[5]

4      Movant's counsel was clear in his testimony that movant refused to enter into a plea

5  agreement which specified a possible prison sentence of 151 to 188 months in prison because he

6  wanted to be able to "argue for less."  (ECF No. 251 at 20.)  Counsel explained that movant did

7  his own research, compared his situation to other criminal cases that he found as a result, and

8  determined for himself, based on his research and comparisons to other prosecutions, that "151

9  was too high."  Because movant was adamant that he would not accept such a resolution of his

10  case, his counsel set out to work on an agreement with the prosecutor in which "we can reach a

11  plea deal where he pleads guilty and gets three points[6] and bottom of the guidelines, but you

12  know, we're free to argue – we won't set a guideline range in there."  (Id. at 20-21.)  Counsel

13  explained that "the only plea deal [movant] was interested was one where he had a shot at the

14  five-year range."  (Id. at 21.)

15      Counsel explained that he tried to convince the prosecutor to drop his insistence on the

16  upward adjustments for "abuse of trust" and "criminal history."  (Id. at 15.)  Counsel stated that

17  he did not personally believe the crime committed by movant was "sophisticated" but that he

18  understood that the "sophisticated means enhancement" under the sentencing guidelines could

19  still be applied.  (Id. at 16.)  Counsel testified he "wanted to fight" the upward adjustments and he

20  "thought there was room to fight them."  (Id.)  Counsel also believed that in general the

21  sentencing judge "didn't like the guidelines;" therefore, counsel believed "that was a good area to

22  target to reduce the guidelines."  (Id.)  Counsel testified that he explained all of this to movant.

23  (Id.)  Counsel recalled that he told movant the sentencing judge was not "wedded to the

24  _____

[5]  Counsel's letter was sent to movant before the government extended the plea offer to movant
25  which contained the stipulated sentencing guideline range of 151 to 188 months in prison with a
  government recommendation of a sentence of 151 months.  (Id. at 15.)  Not surprisingly given its
26  specific warning, at the evidentiary hearing movant testified he did not recall receiving his
  counsel's letter.  (ECF No. 250 at 106.)

27
[6]  This reference is to a three point downward adjustment in the guideline range calculation for
28  acceptance of responsibility under USSG § 3E1.1.

1    guidelines" and "if you could make a good argument, he would listen and you had a chance to not

2    have the guidelines – the particular guideline enhancements apply if you could make an

3    argument." (Id. at 17.)

4          Movant's counsel also testified he definitely did not tell movant he could guarantee a

5    specific sentence based upon counsel's relationship with the sentencing judge. (Id. at 16-17.)

6    Rather, according to movant's counsel he went over the plea agreement with movant and

7    specifically told him "there are no guarantees" and he could "get the max." (Id. at 18.) Counsel

8    agreed with movant that he would ask the trial judge to impose a five year sentence, but that it

9    "might not work" and that movant could receive "the statutory max." (Id. at 22-23.) Counsel

10   testified that he had "many" conversations with movant in which he warned movant that it was a

11   "big risk" to reject the government's plea offer with an agreed upon guideline range of 151-188

12   months and a government recommendation of a sentence of 151 months in prison. (Id. at 24.)

13   Counsel also credibly testified that he never told movant not to tell the trial judge at the plea

14   colloquy about any "side agreement that might not be contained in this written plea agreement."

15   Rather, counsel was adamant at the evidentiary hearing that there were no "side agreements" and

16   that, "as an officer of the court and former federal prosecutor I would never tell a client to lie to

17   the judge." (Id. at 25.)

18         On cross-examination, movant's counsel explained his opinion regarding the various

19   potential  upward adjustments under the sentencing guidelines and whether they applied in

20   movant's case.  First, he explained that he had conversations with his investigator about possible

21   upward adjustments because:

22              they would make up the presentence report which would produce a
               number and the judge would look at that number, and you know,
23              we would have to fight against that number.  If we could get that
               down really low and get the plea agreement such that we could
24              argue for a lower sentence, then it gave us a better chance to get
               that sentence.
25

26   (Id. at 13.)  With regard to the upward adjustment for playing a leadership role in the commission

27   of the offense, counsel denied that he ever told movant in a telephone conversation that this

28   upward adjustment would not apply if Dr. Barham was not indicted. (Id. at 36.)  With regard to

16

the upward adjust for abuse of a position of trust, counsel explained that he made the argument to

the sentencing judge that this guideline provision did not apply to movant, given that he was not a

registered investment advisor, because he had observed that same argument to be successful in

the past before a different judge of this court.  (Id. at 38.)   With regard to the upward adjustment

for the use of "sophisticated means" in the commission of a crime, counsel testified that he

believed in movant's case that "the facts didn't fit the guideline section" and that "there was an

argument there."  (Id. at 46.)  Counsel explained his strategy with respect to the potential upward

adjustments in movant's case as follows:

> I presented Mr. Wilson with the option of contesting loss or, you know, trying to focus our efforts on the other guideline enhancements which I thought we had a better chance at winning at.  I told him in a jail meeting with Investigator Lucking, L-u-c-k-i-n-g, that this was a tactical decision and I wanted to get his input on it.  I told him that I thought we would not win the loss issue and that that – arguing a loss issue would place the victims and all the terrible things that befell them financially squarely in front of Judge Karlton and we would run the risk of, you know, the judge just accepting the PSR and denying our other objections.
>
> I thought we had a better chance at objecting to the sentencing enhancements and the criminal history characterization, and he agreed with me and so that's what we did.  I gave him the option, we talked about it and he said okay, let's go with that.

(Id. at 50-51.)[7]

Movant's counsel further testified that he did not think his objections to the potential

upward adjustments were "loser arguments."  (Id. at 51.)  Although counsel did not necessarily

believe he would win these arguments, he made "the best argument I possibly can and I try to win

every time."  (Id.)  Counsel also testified that he frequently specifically discussed with movant the

risk of rejecting the government's plea offer which included a stipulated guideline range of 151-

188 months imprisonment with a government recommendation of a sentence at the low end of the

guidelines and "just arguing the enhancements because we could lose."  (Id. at 57.)  Counsel was

clear that he never told movant that he was going to win his arguments with respect to the

potential upward adjustments under the guidelines or that the adjustment for the abuse of a

---

[7]  The other investigator employed by movant's counsel was a former FBI agent with extensive experience in financial fraud who also testified at the evidentiary hearing.

position of trust didn't apply in his case.  (Id. at 59-60.)  Rather, counsel testified that he told

movant many times that:

> there are no guarantees in this plea.  We are going to argue these enhancements.  We might win, we might lose.  We're going to argue the 3553 factors[8], and with Judge Karlton we might get – we might be successful, we might not.

(Id. at 61.)

According to counsel, movant steadfastly refused to enter any plea under which he would

be agreeing to a prison sentence in the 151-188 month range.  Counsel explained:

> He wanted to get five years or less; seven, five, three.  This was – regardless of what I said to him, he was not going to take a 151 to 188.

> * * *

> He told me I am not pleading to 151 months.  I want less time.  I have to have a shot at less time.  That was his whole goal, is to have a shot.  As he put in Exhibit J or K to his 2255 motion, he wanted a glimmer of hope for five years.

(Id. at 64-65.)  Counsel explained that he told movant about the government's plea offer but

movant said he didn't want to "do that much time."  Accordingly, counsel told movant that in

order to have any "shot" at "a lower sentence you're going to have to take the risk of pleading to

essentially an open guideline range and arguing to the judge."  (Id. at 65-66.)  According to

counsel, movant agreed to that approach.  (Id.)  Counsel also explained that the pursuit of this

strategy was not based primarily on the applicability of specific provisions of the Sentencing

Guidelines, but rather on the presentation of the case to the sentencing judge and trying to

convince him to impose a low sentence based "upon the 3553 factors."  (Id. at 72.)

Nonetheless, counsel was adamant that he never promised or guaranteed that movant

would receive any particular sentence if he accepted the "open" plea agreement which was the

one ultimately accepted.  (Id. at 86-89.)  Counsel explained:

/////

---

[8]  Referring to the factors to be considered in imposing a sentence as set forth in 18 U.S.C. § 3553(a)

1
2

> All I said was we have these arguments.  We have a good judge
> who will listen to us.  If you don't want this 151 to 188, then let's –
> let's reject it and go for a better deal.  We can argue for less.

3
4

> He was never going to accept anything that wasn't five years or
> less.  That – that was his mantra.

5   (Id. at 91.)  Counsel stated that he "thought we had a shot at Judge Karlton saying criminal

6   history is overstated, he was not an organizer or a leader, and he didn't abuse a position of trust."

7   (Id. at 94.)  He also testified that he "thought it was in [movant's] best interest to enter a plea and

8   I gave him the offer and he rejected it."  (Id. at 97.)[9]

9                              **3.  Post-Hearing Briefing**

10          After the evidentiary hearing was conducted, movant filed a post-hearing brief.  (ECF No.

11   254.)  Therein, movant argues that his trial counsel rendered ineffective assistance in making

12   "clear errors in guideline calculations" which affected counsel's advice to movant as to the

13   possible length of his sentence and whether he should accept the government's plea offer(s).  (Id.

14   at 3.)  Movant also argues that these errors constituted ineffective assistance of counsel under the

15   holdings in United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992), Turner v. Calderon, 281 F.3d

16   851, 880 (9th Cir. 2002), and other cases involving trial counsel's advice to defendants regarding

17   their possible sentencing exposure.  (Id. at 2-3.)

18          Specifically, movant notes that trial counsel argued in objections to the presentence

19   report/sentencing memorandum that the upward adjustment for having played a "leadership role"

20   in the commission of the fraud, did not apply unless there was proof movant exercised some

21   control over others involved in the commission of the crime.  (Id. at 3; see also ECF No. 100

22   (sentencing memorandum) at 5.)  Trial counsel argued that there was no evidence that movant

23   exercised any control or organizational authority over others.  (ECF No. 100 at 5.)  Movant now

24   contends that this argument was "frivolous" because his counsel knew that movant had admitted

25   in the factual basis for his plea that he recruited an accomplice.  (ECF No. 254 at 3.)  Movant also

26   _____

27   [9]  On re-direct examination, movant testified that his counsel told him numerous times that "none
of these enhancements will apply."  (Id. at 106.)  Movant denied telling counsel he would "never
take an offer of 151 months."  (Id. at 107.)  Movant also claimed he did not ask his counsel for a

28   sentence of five years, but rather counsel told him he could get such a sentence.  (Id.)

1   now notes that the Ninth Circuit upheld the trial court's imposition of this upward adjustment.

2   (Id. at 4.)

3       Movant also observes that the sentencing memorandum filed by his former counsel stated

4   that movant "worked alone."  (Id.; see also ECF No. 100 at 5.)  Movant argues, however, that his

5   counsel knew that Dr. Barham was also involved in the investment scheme.  (ECF No. 254 at 4.)

6   Movant notes that in several of the recorded telephone conversations between himself and his

7   former counsel, counsel expressed the belief that Dr. Barham would be indicted.  (See Defense

8   Exhibit C-7.)  Movant argues, however, that the applicability of the upward adjustment for a

9   playing a leadership role in the offense did not depend on whether Dr. Barham would be indicted,

10  and that his counsel's misunderstanding of this fact was below the level of competence required

11  of criminal defense counsel.  (ECF No. 254 at 4.)

12      Movant also points to his former counsel's sentencing memorandum argument that the

13  upward adjustment for the "abuse of a position of trust" did not apply because movant was not a

14  registered investment advisor.  (Id.)  Movant asserts that trial counsel suggested this same

15  erroneous argument in one of the jail telephone conversations with movant.  (Id.)  Movant

16  contends that his counsel's argument on this upward adjustment was "frivolous" because

17  U.S.S.G. § 3B1.3, application note 3, states that this adjustment applies to a defendant even if he

18  simply **leads an investor to believe** he is a "legitimate investment broker," and movant held

19  himself out to his investors as a legitimate hedge fund manager and investment broker.  (Id.)

20  Thus, according to movant, this upward adjustment under the sentencing guidelines was clearly

21  applicable to his case.

22      Movant further argues that his trial counsel's "third erroneous objection" to the

23  presentence report was his argument that movant had not employed "sophisticated means" in the

24  commission of his crime.  (Id. at 5.)  Movant notes that the Ninth Circuit upheld the trial court's

25  imposition of this upward adjustment because his criminal conduct involved "fabricating

26  accounting statements that appeared to have been audited by a fictitious accounting firm."  United

27  States v. Wilson, No. 11-10261, 2012 WL 2184559 at *3 (9th Cir. June 15, 2012).  Movant states

28  that trial counsel's sentencing memorandum "cited no authority to explain why this enhancement

did not apply." (ECF No. 254 at 5.)  He notes that trial counsel agreed at the evidentiary hearing that even the prosecutor believed this enhancement might not apply to movant.  (Id.)

Movant argues that trial counsel's advice to him about the length of his possible sentence was based on counsel's negligence in concluding that movant's criminal history range would be determined to be a category III and not a category IV.  (Id.)  He also argues that, contrary to his counsel's statements to movant and his family, counsel "clearly knew the guidelines were important" to the sentencing judge, as evidenced by the amount of time counsel spent researching this issue, his hiring of a financial expert to verify the loss amount, and his hiring of a "former probation officer as his investigator."  (Id.)  Movant also argues that his trial counsel continued to tell him his loss level could be only be $2 million even after he received a report from his expert which verified the loss as over $ 7 million.  (Id. at 5-6.)

Movant argues that his trial counsel never told him that "the open plea had only a remote chance of getting the five to seven years [he] was hoping for" and failed to warn him of the "strong probability" that his sentencing guideline calculation would "come out" as the prosecutor had predicted.  (Id. at 6.)  He argues that if his counsel "actually believed his erroneous opinions, his understanding of the guideline structure was so faulty that it is outside the standards demanded for attorneys practicing in federal court."  (Id.)

Movant contends that the evidence presented shows there were two plea offers from the government made in this case.  According to movant, the first such offer "required the prosecutor to dismiss the money laundering charge and to recommend the low end of whatever guideline the judge finally determines to be correct."  This offer was found on the prosecutor's computer and discussed in jail conversations between movant and his trial counsel.  (See Defense Exhibits at C10 and A.)  According to movant, the second plea offer from the government was the offer containing a stipulated guideline range of 151 – 188 months with a government recommendation of a sentence of 151 months in prison.  (ECF No. 254 at 7; see also Defense Exhibit A-16.) Movant calculates that the sentence he would have received if he had accepted these offers would have been lower than the sentence he ultimately received.  (ECF No. 254 at 7.)   Movant states that if he had been correctly advised by his counsel he would have accepted one of these two

1   proposed plea offers and would have ended up receiving a far shorter sentence than the one

2   imposed.  (Id. at 6.)

3        Respondent also filed a post-evidentiary hearing brief.  (ECF No. 255.)  Therein,

4   respondent argues that movant has abandoned all of his claims except his claim that his trial

5   counsel rendered ineffective assistance in failing to accurately advise movant as to the application

6   of the U.S. Sentencing Guidelines to his case.  Respondent contends that movant's own testimony

7   and the testimony of his family members at the evidentiary hearing was not credible and that

8   movant's trial counsel did not render ineffective assistance in failing to convey accurate

9   information to movant regarding the application of the Sentencing Guidelines to his case.  (Id.)

10   Respondent also argues that movant has failed to establish that he suffered any prejudice as a

11   result of his failure to accept the government's earlier plea offer.  (Id. at 8.)

12        **4. Analysis**

13        This court will address all of the claims contained in movant's § 2255 motion, regardless

14   of the limited scope of his arguments advanced in his post-evidentiary hearing brief.  As

15   described above, in his § 2255 motion movant claims that he was induced to plead guilty by his

16   trial counsel's:  (1) false promises and guarantees that he would receive a sentence in the 3-5 year

17   range; (2) threats to withdraw from the case if he was not paid additional fees; and (3) erroneous

18   legal advice about the Sentencing Guidelines and the applicability of certain guideline provisions.

19   Movant has also claimed that his trial counsel told him not to mention any of the promises made

20   by counsel about the sentence he would receive to the trial judge at the time he entered his plea.

21   At the September 29-20, 2015 evidentiary hearing, movant testified that his trial counsel told him

22   the Sentencing Guidelines were not important to the trial judge, that many of the potential upward

23   adjustments set forth in the guidelines didn't apply in his case in any event, and that counsel

24   could essentially guarantee a sentence of between three and five years if movant entered an

25   "open" plea.  Movant further testified that he believed he would receive such a sentence even

26   though he was also informed, through various means and at various times, that he could receive a

27   sentence as high as the statutory maximum.

28   /////

1       Movant's trial counsel, on the other hand, testified that when it became clear movant

2   would not enter a plea agreement which contained a stipulated sentencing guideline range offered

3   by the government, he suggested to movant that the only way for him to receive a lower sentence

4   than that likely to be imposed under the government's proposed plea agreement was to instead

5   enter an "open" guilty plea to a number of counts with the more limited government agreement

6   that the remaining counts would be dismissed.  Counsel testified that he told movant the trial

7   judge was relatively receptive to arguments regarding the non-applicability of Sentencing

8   Guidelines and that counsel had a good relationship with the prosecutor.  Counsel explained to

9   movant that he would argue against the upward adjustments for abuse of position of trust, use of

10  sophisticated means, and playing a leadership role, among others.  Counsel legitimately believed

11  there was "room to fight" these upward adjustments to the guideline calculation and that he had

12  an arguable chance of prevailing.  Counsel also thought he might be able to "get [the judge] to

13  come down from the [presentence report]," and that while he "might not go to five years, but he

14  might go to seven," or "nine, he might go to ten."  (ECF No. 251 at 92-93.)  However, counsel

15  also testified that he told movant there was no guarantee he would be successful in making these

16  arguments.  Moreover, the record before this court reflects that counsel wrote a letter to movant

17  on December 8, 2008, wherein he stated that, although he believed it was "likely" that movant

18  would be sentenced to between five and 10 years in prison, that there were "no guarantees" and

19  that movant could receive the maximum sentence.  (Government's Exhibit 11.)  Trial counsel also

20  wrote movant a letter on April 22, 2009, in which he stated that although the presentence report

21  set forth a guideline calculation and recommendation of a prison sentence of almost 20 years,

22  many of the upward adjustments listed in that report "do not apply" and that counsel intended to

23  "argue against all of these and seek a much lower sentence."  (Government Exhibit 6.)

24      A review of the partial transcripts of telephone conversations between the detained

25  movant and his trial counsel reflect the following.  In one of those conversations, movant told his

26  trial counsel that he "definitely" did not want to accept the government's plea offer which

27  included a stipulated guideline range of 151 to 188 months in prison.  (ECF No. 188 at 112.)

28  Trial counsel responded that "in order to make a run at something like in the five year range, three

23

1    to seven year range, we're gonna have to go in with an open plea."  (Id.)  Movant stated at that

2    time he was "willing to do that" and, tellingly, that he was "just putting my faith in God's hands."

3    (Id.)

4         Counsel also told movant in one such telephone conversation that he expected his

5    arguments would result in movant's sentence being "much lower" than that recommended in the

6    pre-sentence report.  (Id. at 123.)  Counsel did say that "since we have Judge Karlton, the

7    guidelines are really not all that important" and that "Karlton's gonna decide what he wants to do

8    regardless of what the guidelines say."  (Id. at 124.)  Counsel also stated that the trial judge was

9    "gonna make his decision based upon his feeling about the case regardless of how the probation

10   officer scores the guidelines."  (Id. at 129.)  Trial counsel also told movant at one point that he

11   would try to convince the prosecutor to drop certain upward adjustments in order to "get [the trial

12   judge] to come down to the sentence we want."  (Id. at 141.)  He also stated that "typically you

13   have an abuse of trust enhancement in a securities case, they have, the government would have to

14   prove that you're a registered investment advisor," and that the upward adjustment for

15   "sophisticated move [sic]" was, in counsel's opinion, "total bullshit."  (Id. at 125.)  However,

16   counsel also specifically and clearly told movant that the sentencing judge could impose the

17   sentence recommended in the pre-sentence report if he wished.  (Id.)

18        In one telephone conversation, trial counsel and movant discussed other criminal cases

19   where the defendants had received varying sentences for participating in Ponzi schemes, and

20   discussed how movant's case compared to those.  (Id. at 129-130.)  Counsel told movant that,

21   after looking at "comparable cases," he "should be getting three to five years, in that range."  (Id.

22   at 131.)  He explained that he intended to argue to the trial judge, "look, okay, we have these

23   losses, there were misrepresentations, they were fraud, there was fraud, okay, but it's not a 20

24   year sentence case."  (Id. at 148.)  Counsel told movant that "it's all gonna come down to a very

25   simple, you know, how does [the trial judge] feel about the case," and he specifically warned

26   movant that "it's also very dangerous because you just don't know what he's gonna think about

27   it."  (Id. at 130.)

28   /////

24

Moreover, and perhaps most importantly, movant clearly expressed his understanding that "this is in Karlton's hands." (Id. at 143.)  Movant also told his counsel that his review of low sentences imposed in other cases involving fraud convictions gave him "a little glimmer of hope." (Id.)

To the extent that these transcripts accurately record what movant and his trial counsel said to each other over the jail telephone, they reflect that trial counsel thought there was certainly a chance that movant could receive a sentence of three to five years in prison, but that counsel also knew there was certainly a chance that the sentencing judge could impose a much higher sentence.  Counsel specifically conveyed these opinions to movant, who decided to pursue the hybrid "open plea" strategy in the hopes that his counsel would be able to persuade the trial judge to impose a three, four, five, seven or even ten year sentence.[10]  However, it is also clear that trial counsel told movant, and movant understood, that the sentencing judge might reject counsel's arguments.  There is absolutely nothing in these telephone transcripts reflecting a guarantee by trial counsel that movant would receive a certain sentence or that movant understood that a sentence in the five year range was being guaranteed.  Nor does the undersigned find at all credible movant's testimony at the evidentiary hearing that his counsel guaranteed him a specific sentence or that movant believed counsel's statements about the possible length of his sentence were the equivalent of a guarantee.

As trial counsel explained at the evidentiary hearing, when it became clear that movant would not accept the government's plea offer involving a stipulated sentencing guideline range, counsel's strategy turned to attempting to persuade the sentencing judge to reject upward adjustments in calculating the guideline range, or to disregard and depart from the Sentencing

---

[10]  Perhaps movant made this election based on his own determination that 151 months in prison was simply unbearable to agree to and that he wished to preserve some glimmer of hope that he could do better or perhaps it was influenced by his perception of his counsel's optimism that he had a legitimate chance to convince the sentencing judge to reject upward adjustments in the guideline calculation or to sentence below the guideline range as determined or both.  Why movant elected to proceed as he did is not critical.  The question is whether he was adequately advised by his counsel of his options as well as of the possible ramifications of the choices he was required to make under the circumstances.

1  Guidelines and impose a modest sentence based on the factors set forth in 18 U.S.C. § 3553, or

2  both.  Counsel believed that he had a chance at convincing the judge to impose a lower sentence

3  than the guidelines suggested.  This belief was based on counsel's previous experience as a

4  prosecutor and defense lawyer, a comparison of movant's case with the cases of other defendants

5  who had been convicted of participating in Ponzi schemes, his knowledge of the sentencing

6  practices of the trial judge, his analysis of the applicability of the Sentencing Guidelines and the §

7  3553 factors to the facts of movant's case, and his view as to the strength of the government's

8  case.

9         Counsel also believed he had reasonable arguments that the upward adjustments based on

10  movant's role in the offense, employment of sophisticated means, and abuse of position of trust

11  did not apply to movant, and that movant's criminal history score was overstated.  Counsel

12  advanced those arguments in his sentencing memorandum, contending that: (1) the adjustment for

13  movant's "role in the offense" did not apply because (a) there was insufficient evidence that

14  movant exercised control or organizational authority over others, (b) Dr. Barham's only

15  involvement was to "promote the fund part time while he worked full time as a chiropractor," and

16  (c) movant did not "organize, lead, manage or supervise anyone;" (2) the adjustment for "abuse of

17  trust" did not apply because (a) movant "did not hold a position of public or private trust," (b)

18  movant was not a registered investment advisor and did not represent himself as one, (c) the

19  investments were "arm's length transactions," and(d)  movant "did not have a close personal

20  relationship with his investors;" (3) the adjustment for use of "sophisticated means" in the

21  commission of his crime did not apply because (a) the crime was not complex or intricate "either

22  as to its execution or concealment," (b) movant's investment scheme was similar to all fraud

23  schemes, and (c) movant did not create a phony accounting firm; and (4) movant's criminal

24  history score was "overstated and greatly exaggerated by the three alcohol-related convictions

25  which were caused by his drinking problem;" therefore, movant was more accurately placed in

26  Criminal History Category III.  (ECF No. 100 at 5-7.)

27  /////

28  /////

1    Although counsel did not prevail on any of these arguments, the undersigned finds that

2    none of them were frivolous.[11]  In any event, trial counsel knew that the Sentencing Guidelines

3    were advisory.  Thus, even if the upward adjustments were applicable to movant, as movant now

4    argues, the sentencing judge could have exercised his discretion to impose a lower sentence.

5    Indeed, it was counsel's strategy to attempt to achieve this result on behalf of movant, who sought

6    to preserve a "glimmer of hope".  Given this strategy, whether or not any particular upward

7    adjustment applied to movant's case was not dispositive of the sentence movant could or would

8    receive in the end.

9        It is certainly true that there is a wide gap between the sentence trial counsel at times

10    predicted and ultimately argued for on movant's behalf, and the sentence movant ultimately

11    received.  However, this fact, standing alone, does not render trial counsel's performance

12    constitutionally deficient.   As discussed above, under the governing legal standards counsel is

13    not required to accurately predict what the court might find, to give an accurate prediction of the

14    outcome of the case, or to have "a crystal ball."  <u>Turner</u>, 281 F.3d at 881, <u>Iaea</u>, 800 F.2d at 865.

15    Here, after considering all relevant factors, including movant's clearly established refusal to

16    accept any plea offer that included a stipulated guideline range of 151-188 months[12], trial counsel

17    concluded that it was in movant's best interest to enter a hybrid "open" plea of guilty to two

18    counts of the indictment in exchange for dismissal of the remaining counts and argue for the kind

19    of sentence movant sought.  Under the circumstances of this case, counsel's actions in this regard

20    were not outside the range of reasonable professional assistance, and it did not fall below the level

21    ───────────────

22    [11]   The undersigned notes that movant's appellate counsel also chose to challenge these same
      upward adjustments in the sentencing guideline calculation, apparently believing the arguments
      against their imposition constituted valid, arguable claims.  (ECF No. 149.)

23

24    [12]   The record fairly establishes that it was unclear precisely what sort of sentence movant
      believed was appropriate in his case or what government sentencing recommendation he would
      have agreed to as part of a plea agreement.  During his evidentiary hearing testimony, movant's

25    former counsel described movant as difficult, having strong personal opinions about his case and
      as presenting a moving target in terms of the sentence he would have accepted.  Even in these

26    collateral proceedings movant has been inconsistent regarding the "promise" or "guarantee" his
      counsel allegedly made to him, with the number varying between three, four, five, seven or less

27    than ten years in prison.  We do know that movant rejected a plea agreement that included a

28    government recommendation of a 151 month prison sentence.

1   of competence required of defense attorneys.

2          It is true that trial counsel minimized the applicability of the potential upward adjustments

3   in his conversations with movant regarding the application of the sentencing guidelines.

4   However, these statements were also consistent with counsel's strategy to urge the sentencing

5   judge to disregard the guidelines and instead impose a lesser sentence based on the considerations

6   set forth in 18 U.S.C. § 3553.  As explained above, the undersigned finds that counsel's

7   arguments with respect to those upward adjustments and movant's criminal history score were not

8   at all frivolous.  The sentencing judge could have accepted counsel's arguments regarding the

9   potential upward adjustments or relied on the § 3553 factors, or a combination of both, and

10   imposed a much lower sentence.  He simply decided that it was no appropriate to do so.  The

11   undersigned does not find that trial counsel's failure to predict how the sentencing judge would

12   rule constitutes deficient performance given the evidence in this case.

13          Moreover, the undersigned concludes that trial counsel's advice to movant was not "so

14   incorrect and so insufficient" that it undermined movant's ability to make an intelligent decision

15   about whether to accept the government's plea offer which included a stipulated guideline range

16   of 151–188 months with a government recommendation of a sentence at the low end of that

17   range.  Turner, 281 F.3d at 880.  Movant was advised by his counsel and others from the

18   beginning of this case, and throughout the proceedings, that there was no guarantee with respect

19   to the sentence he would receive and that he could be sentenced to the statutory maximum.  As

20   explained above, this consistent warning was reinforced for movant in several ways.  First, the

21   plea agreement, which movant signed, specifically stated on its face that "the defendant

22   understands that neither the prosecutor, defense counsel, nor the Court can make a binding

23   prediction or promise regarding the sentence he will receive."  (ECF No. 63 (plea agreement) at

24   2.)  At his change of plea hearing, movant was specifically advised by the trial judge that the

25   maximum prison sentence he could receive was twenty-three years.  (ECF No. 109 at 9.)

26   Moreover, movant was advised that the U.S. Probation Office would provide the trial judge a

27   presentence report which would include an assessment of the applicable Sentencing Guidelines,

28   and that the sentence the judge would impose could be "higher, lower, or at the same level as the

1    guidelines." (Id. at 10.)  At the change of plea hearing, movant also affirmatively stated under

2    oath that no threats had been made against him or any member of his family in order to induce

3    him to plead guilty and that no promises were made to him that were not included in the written

4    plea agreement.  (Id. at 12.)  Movant also admitted at that time that the factual basis for his guilty

5    plea was true.  (Id. at 14.)  These statements under oath by movant carry great weight.  See

6    Blackledge v. Allison, 431 U.S. 63 (1977) (a defendant's representations at the time of his guilty

7    plea concerning the voluntariness of the plea "constitute a formidable barrier in any subsequent

8    collateral proceedings" and "carry a strong presumption of verity"); Marshall v. Lonberger, 459

9    U.S. 422, 437 (1983) (a guilty plea is presumed valid in habeas proceeding when the pleading

10   defendant was represented by counsel).

11           It is clear to the undersigned after hearing testimony and receiving evidence at the

12   evidentiary hearing that movant decided, after conducting his own research and being fully

13   informed of the risks involved, to reject the government's plea offer and enter a hybrid "open"

14   guilty plea because he wanted to pursue the chance that he might be able to obtain a sentence of

15   less than 151 years in prison.  The undersigned does not find that movant's decision to reject the

16   government's earlier plea offer was coerced by his counsel's request for additional attorney fees

17   in light of the time expended on movant's case, counsel's statements to him about the Sentencing

18   Guidelines provisions or his criminal history score, counsel's estimate of the sentence movant

19   would likely receive, or any other statements made or advice given by counsel.  Further, the

20   undersigned does not find at all credible movant's assertion that his trial counsel instructed him

21   not to tell the trial judge about the guaranteed sentence counsel had promised or movant's

22   testimony that he misunderstood what the trial judge was asking when he inquired while taking

23   the plea whether any promises had been made to movant in order to induce him to plead guilty.

24   In sum, movant has failed to demonstrate that his trial counsel's performance was deficient or that

25   /////

26   /////

27   /////

28   /////

1    his guilty plea was coerced or involuntary.  Accordingly, movant is not entitled to relief with

2    respect to this claim for relief under § 2255.[13]

3        **B.  Trial Counsel's Alleged Failure to Meaningfully Challenge the Loss Amount, the**

4    **Number of Actual Victims and an Invalid Restitution Order**

5        In his second ground for relief, movant claims that his trial counsel rendered ineffective

6    assistance in not "meaningfully challenging the loss amount, the victim enhancement, and an

7    invalid restitution order."  (ECF No. 188 at 3.)  Movant claims that his sentence was "improperly

8    scored" because of his counsel's failure to adequately argue the applicability of these factors to

9    his sentence.  The court will address each of these claims in turn below.

10   /////

11   /////

12   ─────────────────────

13   [13]  In his post-hearing brief, claims for the first time that his counsel rendered ineffective
     assistance in misadvising him to reject a government plea offer allegedly extended prior to the
     offer containing the stipulated guideline range of 151–188 months in prison.  (ECF No. 254 at 6.)

14   Movant's exhibits at the evidentiary hearing included six proposed plea agreements but only
     proposal No. 5, the agreement that was ultimately signed, was admitted into evidence.  (ECF No.

15   250 at 23-24.)  The other draft plea agreements were admitted for the limited purpose of showing
     that they were in the prosecutor's file, not that they were ever offers extended to movant.  (Id. at

16   24-25.)  Movant testified that his counsel showed him an email from the prosecutor dated January
     30, 2009 (Defense Exhibit A-15) discussing the prosecutor's view on the applicability of various

17   sentencing guideline provisions and the calculation of movant's base offense level.  (Id. at 72.)
     Movant testified that he rejected that "offer" because his trial counsel told him "the only way you

18   can get three to five years is go open" and that "these enhancements don't apply to your case."
     (Id. at 81.)  Movant also testified that during a meeting in November, 2008, he and counsel had

19   general discussions about "a plea and they wanted me to plead to two counts of wire fraud and
     one count of tax evasion."  (Id. at 73-74.)  Movant understood that the prosecutor's January 30,

20   2009 email, and his counsel's statements during the earlier jail visit, constituted two separate plea
     "offers."  (Id. at 75.)  However, his counsel told movant that these exchanges were "just the

21   beginning, we're just at the beginning stages and he alluded that it's going to morph, we're going
     to keep working at it and get the deal."  (Id.)  Movant testified he never told his counsel "to reject

22   the first deal" and he was never told when it expired.  (Id. at 76.)  Movant also testified that he
     never rejected the first government plea offer (discussed during the meeting between counsel and

23   movant at the jail) because his counsel "never really explained it to me."  (Id. at 139.)  This
     evidentiary hearing evidence is insufficient to establish the parameters of any alleged earlier

24   proposed government plea agreement, the substance of counsel's advice to movant about whether
     to accept any of these alleged "offers," or even whether, and if so why, movant decided to reject

25   them.  Moreover, there is no evidence before the court that movant was willing to reject all plea
     offers and proceed to trial in this case.  In short, movant has failed to meet his burden to

26   substantiate any such claim and relief should therefore be denied.

27

28

                                                  30

1      **1. Loss Amount**

2          Movant claims that his sentence would have been lower if his trial counsel had correctly

3  "challenge[d] the loss calculations in any meaningful way."  (Id. at 35.)  Movant argues that his

4  investment fund was not a typical Ponzi scheme and that his counsel could have challenged the

5  loss amount urged by the prosecutor and adopted in the presentence report on this basis.  (Id. at

6  25-35.)  Movant describes several methods by which the loss amount caused by his crime could

7  have been calculated at a lower figure.  (Id. at 35-40.)

8          The record reflects that, in his sentencing memorandum, movant's counsel challenged the

9  loss amount as determined in the presentence report.  (ECF No. 100 at 6.)  Counsel also argued,

10  as movant does in the instant motion, that movant's investment fund "was not a Ponzi scheme at

11  the outset," and was not set up in order to steal the funds of his investors.  (Id. at 1-2.)  Counsel

12  made similar arguments on movant's behalf at his sentencing hearing.  (ECF No. 110 at 6-8.)

13  These arguments were part of counsel's overall strategy of mounting a broad challenge to the

14  length of movant's sentence in light of the factors set forth in 18 U.S.C. § 3553.

15          Further, as noted by respondent, counsel specifically discussed this overall defense

16  strategy with movant.  In one of the telephone calls between movant and his trial counsel, the

17  following exchange took place:

18              [Movant]:  . . . I'm trying to think if I'm a judge or, and I haven't
              never been through this as much as you've dealt with all this kind
19             of stuff so correct me if I'm wrong, but I just, I just get an uneasy
              feeling if I heard this guy never made money from day one, if it was
20             a scam from the first time he took people's money.  And that is just
              not true.
21
              [Counsel]:  Well no, but we argue that, we argue that this was not a
22             scam from day one.  You took people's money in, you legitimately
              invested it, and then, and then, and then when the market went
23             down, you know, that's when you had problems.

24              [Movant]:  Okay.

25              [Counsel]:  That's how we're selling this to the judge.  We're not
              gonna try and get involved in numbers.
26
              [Movant]:  Right.
27
              [Counsel]:  We were up this much or that much.  We're gonna say
28             look, what separates this from all other Ponzi schemes is the fact

1    that this was a legitimate investment fund.  It started out that way,
2    in the end it ended up in fraudulent activity.  Or somewhere along
     the continuum.

3         [Movant]:  Okay.

4         [Counsel]:   It ended up, it did not start out that way.   Now in
5    response to that, the government's gonna say wait a minute, you
     know, the statements were fraudulent from day one.

6         [Movant]:  Right, but even . . .

7         [Counsel]:  So we have to be very careful how we, how we address
     that with the court.

8

9    (ECF No. 188 at 153.)

10        In addition, as set forth above, at the evidentiary hearing movant's trial counsel testified as

11   follows:

12        I presented Mr. Wilson with the option of contesting loss or, you
13   know, trying to focus our efforts on the other guideline
     enhancements which I thought we had a better chance at winning
14   at.  I told him in a jail meeting with Investigator Lucking, L-u-c-k-i-
     n-g, that this was a tactical decision and I wanted to get his input on
15   it.  I told him that I thought we would not win the loss issue and
     that that – arguing a loss issue would place the victims and all the
16   terrible things that befell them financially squarely in front of Judge
     Karlton and we would run the risk of, you know, the judge just
17   accepting the PSR and denying our other objections.

18        I thought we had a better chance at objecting to the sentencing
     enhancements and the criminal history characterization, and he
19   agreed with me and so that's what we did.  I gave him the option,
     we talked about it and he said okay, let's go with that.

20   (ECF No. 251 at 50-51.)

21        Movant's trial Counsel also testified that:

22        we were better off not arguing the loss numbers because we
23   couldn't prove that the loss was less than the government's
     calculations and so therefore, as a tactical decision, we were better
24   off arguing the guideline – other guideline enhancements because to
     argue the loss to the Court would have put into focus the victims
25   and their problems, and that would – I thought that was a dangerous
     place to be, rather than accepting the responsibility for the loss and
26   then argue where I thought we had the best chance to win, which
     was the enhancements.

27   (Id. at 33-34.)

28   /////

32

The undersigned concludes that movant's trial counsel's approach to the loss amount in the context of his overall defense strategy was not deficient.  Under the circumstances of this case, it did not constitute ineffective assistance for trial counsel to proceed with the strategy he proposed to movant and was adopted by him with respect to the treatment of the loss amount calculation at sentencing.

Movant has also failed to demonstrate prejudice with respect to this aspect of his ineffective assistance of counsel claim.  There is no evidence that the result of movant's proceedings would have been different if his counsel had made the arguments now suggested by movant with respect to challenging the loss amount caused by his fraud.  Movant has failed to show a "reasonable probability" that any argument for a lower loss amount determination would have prevailed.  Strickland, 466 U.S. at 694.  Both the government and the probation officer in his presentence report calculated the loss caused by movant's crimes at $14.6 million and the government was prepared to support that figure.  Nor does the undersigned find that movant was induced to plead guilty based on his counsel's statements or strategy regarding the applicable loss amount.  Accordingly, movant is not entitled to relief on this aspect of his claim.

### 2. Determination of the Number of Victims

Movant also claims that his trial counsel rendered ineffective assistance in failing to specifically challenge the number of victims of his investment fund.  (ECF No. 188 at 38-40.)  He argues, essentially, that the presentence report erroneously included two investors in the total number of his fraud victims, and that the loss attributed to two other identified victims should have been decreased by the amount that they withdrew from their accounts with movant.  (Id.)  Movant argues that if these modifications to the loss calculation had been corrected in the presentence report and accepted by the sentencing judge, his sentence would have been reduced by "10.29 Years/19.6 Years."  (Id. at 40.)

Movant has failed to demonstrate either deficient performance or prejudice with respect to this aspect of his ineffective assistance of counsel claim.  As explained above, trial counsel's strategy was not to challenge the loss amount calculation where he perceived movant to be most vulnerable but to contest other upward adjustments to the sentencing guideline calculation while

1  arguing for an even lower sentence based on the sentencing factors set forth in 18 U.S.C. §

2  3553(a).  Declining to make an argument challenging the loss calculation that would have been

3  inconsistent with that sound defense strategy does not constitute deficient performance.  There is

4  also absolutely no evidence before the court even suggesting that movant would actually have

5  received a lower sentence if his counsel had challenged the number of his victims or the amount

6  of loss caused by his crimes.  Similarly, there is no evidence suggesting that movant entered into

7  the plea agreement he accepted because of any statements by his trial counsel or strategies

8  adopted by counsel with respect to whether and how to challenge the determination of the number

9  of movant's victims or the loss amount attributable to his crimes.  Accordingly, movant is not

10  entitled to relief on this aspect of his ineffective assistance of counsel claim.

11  **3.  Invalid Restitution Order**

12  In his final ground for relief, movant claims that the restitution order imposed by the

13  sentencing judge was invalid.  (Id. at 40-41.)  Movant contends that the restitution amount

14  imposed in the judgment was not based on the amount of loss actually caused by his criminal

15  conduct.  (Id.)

16  Movant's failure to raise this non-constitutional argument on appeal precludes its

17  consideration in this habeas petition.  See Stone v. Powell, 428 U.S. 465, n.10 (1976)

18  ("nonconstitutional claims that could have been raised on appeal, but were not, may not be

19  asserted in collateral proceedings").  Accordingly, relief as to this claim should also be denied.

20  **IV.  Conclusion**

21  Accordingly, IT IS HEREBY RECOMMENDED that:

22  1.  Movant's November 25, 2013 motion to vacate, set aside, or correct his sentence

23  pursuant to 28 U.S.C. §2255 be denied; and

24  2.  The Clerk of Court be directed to close the companion civil case No. 2:13-cv-2466

25  TLN DAD P.

26  These findings and recommendations are submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28  after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  October 30, 2015

*Dale A. Drozd*

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
Wilson114.2255

35