UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Respondent,<br><br>    v.<br><br>STEFAN WILSON,<br><br>    Movant. | No. 2:08-cr-0114 TLN DB<br><br><br>FINDINGS AND RECOMMENDATIONS |

Movant is a federal prisoner proceeding pro se. On September 15, 2009, following his entry of a plea of guilty pursuant to a plea agreement, movant was convicted of one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of making and subscribing a false income tax return in violation of 26 U.S.C. § 7206(1). Pending before the court is movant's post-conviction motion to amend his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. He seeks to add a claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Respondent opposes the motion.

**I.      Procedural Background**

    **A.      Movant's Conviction and Sentencing**

On March 13, 2008, an indictment was filed charging movant with multiple counts arising from his operation of an alleged Ponzi scheme known as CIC Investment Fund. (ECF No. 10.) On March 17, 2009, movant pled guilty to one count of wire fraud (Count 14) and one count of

making and subscribing a false income tax return (Count 31) pursuant to a written plea agreement. (ECF No. 63.) That plea agreement did not contain any agreement between the parties as to any appropriate sentencing range, but rather provided that "[s]entencing is a matter solely within the discretion of the Court and the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement." (Id. at 2.)

On September 15, 2009, movant was sentenced to 236 months imprisonment in the custody of the U.S. Bureau of Prisons as to the wire fraud charge and 36 months imprisonment on the false tax return charge with those sentences to run concurrently, to be followed by a three year term of supervised release. (ECF Nos. 105 & 106.) In addition, imposition of a fine was waived due to movant's inability to pay a fine, the mandatory $200 special assessment was imposed, and movant was ordered to pay $12,514,623.35 in restitution to the victims of his offenses.

On September 17, 2009, movant filed a timely notice of appeal from the judgment. (ECF Nos. 104, 113.) In an unpublished opinion, the Ninth Circuit vacated petitioner's sentence and remanded for resentencing. (ECF No. 113.)

On remand for resentencing, the then-assigned District Judge made certain findings and re-imposed the same sentence that had originally been imposed upon movant, including the 236-month prison term. (ECF No. 128.) Movant again appealed. (ECF No. 129.) On June 15, 2012, the Ninth Circuit affirmed the district court's findings on remand, and affirmed movant's sentence. (ECF No. 149.)

**B.     Movant's § 2255 Motion to Vacate, Set Aside, or Correct Sentence**

Movant filed his § 2255 motion in this court on November 25, 2013. (ECF No. 188.) There, he first claimed that his retained counsel induced him to plead guilty with: (1) false promises and guarantees, both to him and to his family, that he would receive a prison sentence in the 3-5 year range; (2) threats to withdraw from the case if he was not paid additional fees; (3) a "threat" that movant should not mention any promises made by counsel about his sentence to the trial judge; and (4) erroneous legal advice about the Sentencing Guidelines and the applicability

of certain guideline provisions. Movant also claimed that trial counsel rendered ineffective assistance in not "meaningfully challenging the loss amount, the victim enhancement, and an invalid restitution order."

On June 1, 2015, an evidentiary hearing was scheduled and the Federal Defender was appointed for that purpose, which was limited to the question whether movant's guilty plea was coerced by his trial counsel's promises regarding the sentence he would receive if he pled guilty to the charges. (ECF No. 226.) The evidentiary hearing was held on September 29-30, 2015 on that single claim. Both parties also filed post-hearing briefs. (ECF Nos. 254-55.)

On October 30, 2015, the then-assigned magistrate judge issued findings and recommendations to deny movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. These findings and recommendations were adopted in full on March 31, 2016. (ECF No. 306.)

Movant thereafter filed a motion to vacate pursuant to Federal Rule of Civil Procedure 60(b). (ECF No. 327.) On August 16, 2017, the undersigned recommended that this motion be denied in part. (ECF No. 347.) Those findings and recommendations remain pending before the Honorable Troy L. Nunley.

### C. Movant's Motion for Leave to Amend

During the pendency of the October 30, 2015, findings and recommendations on the § 2255 motion, movant moved pro se for leave to amend his § 2255 petition. Mov.'s Mot. to Amend ("MTA") (ECF No. 291.) This motion was premised on facts that movant claims he first learned in January 2016, namely, that the prosecution relied on movant's wife, Christina, as an undisclosed FBI informant. Movant claims the government's failure to disclose this information violated Brady v. Maryland, 373 U.S. 83 (1963).

Respondent initially opposes the motion to amend on the ground that movant's guilty plea explicitly waived his right to bring a § 2255 petition. (ECF No. 346.) Alternatively, the government argues that equitable tolling does not apply to movant's Brady claim. In the August 16, 2017, findings and recommendations referenced supra, the undersigned directed the parties to file supplemental briefs on movant's motion to amend. Respondent filed a response on August

22, 2017 (ECF No. 348), and movant filed his response on September 26, 2017 (ECF No. 356). The motion to amend is now fully briefed and ready for disposition.

**II.     Discussion**

    **A.     Legal Standard**

The amendment of a § 2255 motion is governed by Rule 15 of the Federal Rules of Civil Procedure. See Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000); see also United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000). Under Federal Rule of Civil Procedure 15(a), one seeking collateral relief may amend his pleadings once as a matter of course before a responsive pleading is served and may seek leave of court to amend his pleading at any time during the pendency of the proceeding. See Mayle v. Felix, 545 U.S. 644, 654 (2005); see also In re Morris, 363 F.3d 891, 893 (9th Cir. 2004) (Rule 15(a) applies to habeas actions with the same force that it applies to other civil cases). Although leave to amend should be given freely, a court may deny a motion to amend if the motion is made in bad faith, there would be prejudice to the opposing party, the amendment would be futile or would delay resolution of the action, or if the party acted in a dilatory fashion in seeking leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962).

    **B.     Analysis**

Pursuant to the plea agreement, movant explicitly gave "up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence." Plea Agr. at 8-9 (ECF No. 63). Notwithstanding these terms, movant was not precluded from bringing a § 2255 petition on grounds of ineffective assistance of counsel related to his guilty plea, which he did on November 25, 2013. See Washington v. Lampert, 422 F.3d 864, 870 (9th Cir. 2005) (a waiver cannot bar an ineffective assistance of counsel claim associated with the negotiation of the plea agreement itself). That motion was denied on March 31, 2016. (ECF No. 306.)

Unlike his § 2255 motion, movant's instant motion to amend is not premised on an ineffective assistance of counsel claim related to his plea agreement. Rather, he argues that the government improperly withheld the identity of a confidential informant in violation of Brady, even after his attorney specifically asked for this information. Movant contends the government's

reliance on movant's wife as a confidential informant provided them "illegal access to information from the defendant prior to charging and post charging." MTA at 2.

A <u>Brady</u> violation occurs where the prosecution withholds evidence that is material and favorable to the defendant. <u>Brady</u>, 373 U.S. at 87-88. Materiality exists where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985)). When the defendant enters a guilty plea rather than proceeding to trial, materiality is determined by "whether there is a reasonable probability that but for the failure to disclose the <u>Brady</u> material, the defendant would have refused to plead and would have gone to trial." <u>Sanchez v. United States</u>, 50 F.3d 1448, 1454 (9th Cir. 1995).

The law is clear, however, that movant may not raise claims of deprivation of his constitutional rights that occurred prior to his plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). See also <u>McMann v. Richardson</u>, 397 U.S. 759, 770-71 (1970); <u>Moran v. Godinez</u>, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other grounds by <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75–76 (2003); <u>Ortberg v. Moody</u>, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea"); <u>Hudson v. Moran</u>, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations); <u>United States v. DeVaughn</u>, 694 F.3d 1141, 1153 (10th Cir. 2012) ("A guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court").

////

Nonetheless, it is possible to construe movant's <u>Brady</u> claim as an attack on the voluntariness of his plea. In <u>Sanchez</u>, <u>supra</u>, the Ninth Circuit held that <u>Tollett</u> did not bar a defendant challenging the voluntariness of a guilty plea from asserting a <u>Brady</u> claim since "'a defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case[,]'" and "if a defendant may not raise a <u>Brady</u> claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." 50 F.3d at 1453; <u>see also</u> <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) (applying <u>Brady</u> in guilty plea context).

However, in <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." <u>Id.</u> at 633. By pleading guilty, a defendant "foregoes not only a fair trial, but also other accompanying constitutional guarantees," such as the privilege against self-incrimination, as well as the rights to confront one's accusers and to trial by jury. <u>Id.</u> at 628-29 (citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969)). "Given the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" <u>Id.</u> at 629 (quoting <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970) (alterations in original)). But this does not necessarily mean that impeachment information must be disclosed before a guilty plea may be entered. <u>See id.</u>

> [I]mpeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary ("knowing," "intelligent," and "sufficient[ly] aware"). Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case"). And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it. A defendant, for example, may waive his right to remain silent, his

right to a jury trial, or his right to counsel even if the defendant does
not know the specific questions the authorities intend to ask, who
will likely serve on the jury, or the particular lawyer the State might
otherwise provide.

Ruiz, 536 U.S. at 629-30 (second alteration in original). The Supreme Court also explained that the Constitution "does not require complete knowledge of the relevant circumstances" before a defendant may plead guilty. Id. at 630. The Ruiz Court rejected the Ninth Circuit's view that a guilty plea is not voluntary unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have to make under Brady if the defendant chose to go to trial. See id. at 629, 632.

Thus, insofar as movant contends that he was denied impeachment evidence in violation of Brady prior to entering his plea, Ruiz forecloses this argument.

There is disagreement in the lower courts as to whether Ruiz applies to exculpatory evidence, as discussed in Robertson v. Lucas, 753 F.3d 606, 621 (6th Cir. 2014):

> Ruiz established that impeachment material need only be disclosed for trial. See United States v. Wells, 260 Fed. Appx.. 902, 903-04 (6th Cir. 2008). Appellants contend that the evidence at issue was exculpatory and therefore not covered by the rule set forth in Ruiz. We have not yet had occasion to determine whether Ruiz applies to exculpatory Brady material, a question that has caused some disagreement among our sister circuits. Compare United States v. Ohiri, 133 Fed. Appx.. 555, 562 (10th Cir. 2005) ( "[T]he Supreme Court did not imply that the government may avoid the consequence of a Brady violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.") and McCann v. Mangialardi, 337 F.3d 782, 788 (7th Cir. 2003) ("Ruiz indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence."), with Friedman v. Rehal, 618 F.3d 142, 154 (2d Cir. 2010) ("[T]he Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide Brady material prior to trial, and the reasoning underlying Ruiz could support a similar ruling for a prosecutor's obligations prior to a guilty plea.") (internal citations omitted) and United States v. Conroy, 567 F.3d 174, 179 (5th Cir. 2009) ("Ruiz never makes such a distinction nor can this proposition be implied from its discussion.").

Robertson, 753 F.3d at 621.2

The Ninth Circuit has not yet decided in a case to which the AEDPA applied whether Ruiz does or does not require disclosure of exculpatory Brady material. At least one California

7

district court has concluded that after Ruiz, a petitioner can no longer assert a Brady claim to attack the voluntariness of his plea, see Clark v. Lewis, Case No. 2:12-cv-2687 TLN GGH, 2014 WL 1665224, at *8 (E.D. Cal. 2014) ("Although the Ninth Circuit previously held that a Brady claim could be asserted to attack the voluntariness of the plea, see Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995), the Supreme Court has since held otherwise. In United States v. Ruiz, 536 U.S. 622, 629 (2002), the Supreme Court did hold that withholding of impeachment material did not give rise to a cognizable Brady claim in the context of a guilty plea."), while other courts have continued to apply Sanchez even after Ruiz. See, e. g., Moore v. Adduci, 2013 WL 2417947, at *12 (C.D. Cal. 2013); Wright v. Dir. of Corrs., 2013 WL 6388380, at *8 (C.D. Cal. 2013).

In United States v. Bagley, 473 US. 667, 676 (1985), though, the Supreme Court rejected any argument that impeachment evidence is constitutionally different from exculpatory evidence. The undersigned finds no reason here to depart from Bagley and therefore concludes that Ruiz's holding that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant" applies equally to exculpatory evidence. Thus, in light of Ruiz and Bagley, whether the evidence proffered by movant is exculpatory or impeachment material, his Brady claim fails.

But even if Brady did apply movant's claim is without merit. He states that he suffered prejudice in that "the government had illegal access to information from the [movant] prior to charging and post charging." MTA at 2. This included (a) information gleaned from scanning movant's computers, (b) the location of a missing computer that movant had sent in to Apple Computers for repair, and (c) movant's defense strategy "in the first stages of the defense to the case." Id. at 3.

Movant first asserts that he only recently became aware that Christina provided certain information to the prosecution before and after his indictment, including information related to his computer usage. He claims that, had he known this earlier, he would have challenged the search warrant "because the Magistrate was not advised of the relationship of the 'source' as being the [movant]'s wife." MTA at 7 n.4.

Movant does not explain how the identity of the informant is material to the information obtained by the government about his computer usage. Regardless, based on the government's April 25, 2008, filing titled "Government Brief Re: Detention Pending Trial," it is evident that both the magistrate judge and movant knew as early as the March 20, 2008, arraignment that Christina willingly provided information to the government – and was willing to testify thereto – on a range of topics, including movant's computer usage:

> On March 20, 2008, Magistrate Judge Brennan ordered the defendant detained without bail as a flight risk. **The order was based, in part, on a government proffer that the defendant's wife, Christina, was prepared to testify that after the government executed a search warrant at the defendant's home, she witnessed him doing internet research on a variety of topics relating to fleeing the country. According to the proffer, these included such topics as: how to move funds out of the country, how to get to the Philippines illegally, how to travel from the Philippines to Taiwan, how to find apartments in Taipei, how to travel with cash (which involved an x-ray proof bag), and the use of Swiss bank accounts.** Christina was also prepared to testify that during this same time period, she saw the defendant in possession of several thousand dollars in cash, that he was attempting to raise more money by selling assets, that he had made statements to her about leaving the country, that she found recently acquired passports photo in his wallet, and that he had made a statement, after he had been drinking, that the IRS and FBI case agents, along with the defendant's mother-in-law, "needed a bullet in the head." (According to Christina, the defendant believes his mother-in-law is the one who first brought this case to the attention of law enforcement.)

Gov't Br. Re: Detention Pending Trial (ECF No. 20) at 1-2 (emphasis added). Additionally, the transcript of the April 28, 2008, "Hearing re: defendant's motion for reconsideration of detention" makes clear that movant's internet searches in fact came from a laptop that was provided to the government by Christina *with permission of movant's attorney*. (See ECF No. 111 at 41.) Movant's argument that this information was provided surreptitiously is therefore disingenuous.

Next, movant contends that Christina sought the location of a laptop that had been sent in to Apple Computers for repairs, information that she then transmitted to the FBI. Undermining this argument is movant's testimony at the aforementioned April 28, 2008, hearing, in which he claimed to have voluntarily produced that same computer to the government:

////

9

> A: Did an agent of the IRS call you up concerning computers?
>
> Q: Yes.
>
> A: … What did the agent tell you?
>
> Q: He said that they – the computers that they had access to, they did not find information, was there another computer? And I said, yes, there was. And they asked if I would surrender it to them, and I said I would.
>
> A: Okay. And did you ultimately surrender that?
>
> Q: Yes, I did.

(ECF No. 11 at 18; see also id. at 26.) Thus, even if Christina has relayed information regarding the location of this laptop as an FBI informant, the fact remains that movant himself volunteered this same information—and the actual computer—to the government. In any event, the IRS agent who sought this computer testified that there "was nothing on that laptop," negating any claim of prejudice by movant. (ECF No. 111 at 41.)

Movant lastly claims that Christina, who sat in on his meetings with his defense counsel, provided confidential attorney-client information to the prosecution in violation of his Sixth Amendment rights. It is axiomatic however that, without the assertion of specific facts warranting the application of an exception, Christina's mere presence during any meetings between movant and his attorney would have waived any assertion of the attorney-client privilege. See United States v. Palmer, 536 F.2d 1278, 1281 (9th Cir. 1976) (communications not confidential because third party involved). Furthermore, insofar as movant asserts or suggests that Christina disclosed his trial strategy, movant himself disclosed his trial strategy at the April 28, 2008, hearing, which is set forth here in relevant part:

> Q: … After the 18th, did you seek legal counsel?
>
> [Movant]: Yes. I believe I sought legal counsel on the 18th.
>
> Q: Okay. And as a result of that, did you devolve upon a strategy in which to deal with your particular case?
>
> A: Yes, I –
>
> Q: And was that strategy, did that have to do with being as transparent as possible?

|   |   |
|---|---|
| 1 | A: Absolutely. |
| 2 | Q: What did your strategy include? |
| 3 | A: Immediately contacted certain investors to let them know what was going on. I asked them to contact the Attorney General's Office, or yourself. I was going to be transparent with everybody. |

(ECF No. 111 at 17-18.) Again, the court finds no prejudice here.

In his declaration in support of the MTA and in his reply brief, movant offers additional arguments. First, he argues that the identity of the confidential informant was relevant because Christina was the source of movant's expenditures in that she encouraged him to spend lavishly on cars and jewelry. "In fact, all material assets seized were items Movant's wife purchased and put in her name while she was the FBI's sole confidential informant." See Mov.'s Traverse to Gov.t's Opp'n to MTA (ECF No. 346) at 7. He also argues that Christina encouraged movant to go to Texas for investor meetings in January and February 2008 and then encouraged the investors to invest their funds. Mov.'s Decl. in Supp. of MTA (ECF No. 291-2) ¶ 3. These meetings served as a portion of the factual basis for movant's guilty plea to wire fraud: "With respect to Count 14, invester [sic] 'Richard G.' executed a wire transfer from his Northern Trust Association account in Texas to the CIC Washington Mutual account in California on or about February 1, 2008." Plea Agr. Ex. A (ECF No. 63 at 12).

Movant contends that Christina's conduct was sufficient for him to rely on an entrapment defense. The entrapment defense has two elements: "(1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." United States v. Barry, 814 F.2d 1400, 1401 (9th Cir. 1987). As for his expenditures, movant argues that the majority of these occurred at Christina's insistence after she began cooperating with the government in July 2007, but the record reveals that many of his lavish personal expenditures occurred prior to Christina's participation as a confidential informant, including a June 2006 withdrawal of $403,017.93 for the purchase of a home, a September 2006 withdrawal of $118,000 for the purchase of a Lamborghini Gallardo, and a $90,000 withdrawal for the purchase of a yacht. See Compl. ¶¶ 22-25. These expenditures before Christina's cooperation with the government negate the first element of an entrapment defense. Additionally, while

movant states that Christina encouraged him to go to Texas in January and February 2008, he readily admits that he already had "p[l]ans to go to Texas for investor meetings there," thereby negating the second element of an entrapment defense. See Mov.'s Decl. ¶ 3.

Finally, movant contends that, had he known Christina was the confidential informant, he could have asserted the marital communications privilege. This privilege provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged.…" Wolfle v. United States, 291 U.S. 7, 14 (1934). "The privilege (1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications, i.e., those not made in the presence of, or likely to be overheard by, third parties." United States v. Montgomery, 384 F.3d 1050, 1056 (9th Cir. 2004) (citing United States v. Marashi, 913 F.2d 724, 729-30 (9th Cir.1990)). The marital communications privilege is construed narrowly to promote marriage without thwarting the administration of justice. Id.; Marashi, 913 F.2d at 730. Movant identifies no communications between himself and Christina that would be subject to the marital communications privilege. Additionally, as noted supra, movant was well aware before he plead guilty that Christina was willing to testify against him on a number of matters, including his internet research on topics relating to fleeing the country, his possession of several thousand dollars in cash, his attempt to raise more money by selling assets, and statements he made to her about leaving the country. He made no assertion of the marital privilege at that time.

For these reasons, the undersigned finds that amendment would be futile and will therefore recommend that movant's motion to amend be denied.

**III. Conclusion**

Based on the foregoing, IT IS HEREBY RECOMMENDED that movant's March 1, 2016, motion for leave to amend (ECF No. 291) be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: December 26, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB7;
DB/Inbox/Substantive/wils0114.mta.v2